IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN H. MACSHERRY, JR.,

    *Plaintiff,*

    v.

SPARROWS POINT, LLC, *et al.*,

    *Defendants.*

Civil No. ELH-15-00022

**MEMORANDUM OPINION**

John H. Macsherry, Jr., plaintiff, filed suit against defendants Sparrows Point, LLC ("Sparrows"); Commercial Development Co., Inc. ("CDC"), the sole owner/member of Sparrows; and Michael Roberts, President of Sparrows, seeking to recover a commission of $825,000 in connection with the sale of commercial real property. *See* ECF 2.[1]  In particular, plaintiff alleged claims for violation of the Maryland Wage Payment & Collection Law (the "MWPCL" or "Wage Act"), Md. Code (2008 Repl. Vol., 2014 Supp.), §§ 3-501 *et seq.* of the Labor & Employment Article ("L.E."), as well as breach of contract, promissory estoppel/detrimental reliance, and quantum meruit.

The defendants moved to dismiss, asserting various contentions. *See* ECF 9; ECF 9-1.  In sum, they argued that the alleged contract is not a contract, ECF 9-1 at 10-11, 19; that defendants never promised Macsherry the commission in issue, *id.* at 16; that Macsherry conferred no benefit on defendants warranting the commission, *id.* at 18; and that, even if a contract exists, as

---

[1] Suit was filed in the Circuit Court for Baltimore County.  Defendants removed the case to federal court based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332.  ECF 1 (Notice of Removal).

alleged, it did not entitle Macsherry to the requested commission.  *Id.* at 10-15, 19.  Further, defendants argued that Macsherry failed to allege facts sufficient to support his claims that CDC and Roberts were employers within the meaning of the Wage Act or parties to the alleged contract.  *Id.* at 7-10, 15-16.

By Order entered May 21, 2015 (ECF 19), I denied the motion (ECF 9) with respect to Sparrows and CDC.  However, I granted the motion with respect to Roberts, without prejudice, and with leave to amend the complaint.  *Id.*

Thereafter, in July 2015, plaintiff filed a "First Amended Complaint ("Amended Complaint," ECF 26), to which he attached two exhibits.  Both Sparrows and CDC responded by Answer.  ECF 28.  But, Roberts again moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion," ECF 29), supported by a memorandum (ECF 29-1) (collectively, the "Motion").  In essence, Roberts alleges that the Amended Complaint does not cure the fatal flaws that existed as to him in the original complaint.  Plaintiff opposes the Motion ("Opposition," ECF 33) and Roberts has replied ("Reply," ECF 34).

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.  For the reasons stated below, I shall grant the Motion in part and deny it in part.

## I.  Factual Background

Plaintiff alleges that he was jointly employed by Sparrows and CDC as Vice president of Leasing and Development, and was paid by Sparrows.  ECF 26 ¶¶ 1, 7.  Macsherry avers that Roberts is President and Managing Member of Sparrows, as well as Principal, President, and co-owner of CDC.  ECF 26  ¶¶ 1, 6.

Macsherry claims that, in his work for defendants, he (Macsherry) was responsible for the marketing and brokerage efforts for a property located at the Sparrows Point Peninsula (the "Property") in Baltimore County.  *Id.* ¶ 1.  He also avers that he "entered into an employment contract with Defendants" by which he was promised, among other things, a salary as well as a commission upon sale or lease of the Property and other properties.  *Id.*  According to plaintiff, "a very lucrative sale of the Property" occurred, but "Defendants have failed and refused to pay" plaintiff the commission due and owing, in the amount of $825,000.  ECF 26 ¶ 1.

Plaintiff asserts that "Defendants were Plaintiff's 'employer' for purposes of the MWPCL."  ECF 26 ¶ 8.  Plaintiff attached to his Amended Complaint as Exhibit 1 (ECF 26-2) a document that he contends constitutes his contract of employment.[2]  It identified plaintiff's position as "Vice President of Leasing and Development – Sparrows LLC," with a start date of December 10, 2012.  Plaintiff signed the document under the handwritten word "Accepted."  ECF 26-2.   The document describes Macsherry's responsibilities, as well as his promised wages and commissions.  ECF 26-2; *see also* ECF 26 ¶¶ 13, 14.

Macsherry asserts: "Defendants informed [him] that Defendant Roberts would execute the Contract."  ECF 26 ¶ 12.  However, Macsherry claims that he was never provided with an executed copy, despite his repeated requests.  *Id.*    In any event, there is no reference to Roberts in any of the text contained in ECF 26-2.  But, the document (ECF 26-2) contains a number of edits, which plaintiff avers were made by Robert Schoelch, CDC's Vice President.  ECF 26 ¶ 12. According to plaintiff, he "reported" to Schoelch until Schoelch left the company in April 2014. ECF 26 ¶ 7.

---

[2] Roberts refers to the document as a "Term Sheet."  *See*, *e.g.*, ECF 29-1 at 2.

As to Roberts, the Amended Complaint alleges, ECF 26 ¶ 8:  "Defendant Roberts was Plaintiff's employer by virtue of his leadership role with each entity and his direction and control over employment decisions, including the payment of wages to Plaintiff generally and the payment of the commission at issue in this matter specifically."   Macsherry points out, for example, that Rebecca Lydon, who "was in charge of Human Resources for each entity," directed him to Roberts "with questions regarding his wages and the commission at issue here." *Id.*  Plaintiff also alleges: "Roberts is the individual who hired Plaintiff, upon information and belief, signed the contract governing Plaintiff's employment, made the decision to terminate Plaintiff's employment, and generally supervised and controlled all employees including Plaintiff." *Id.* ¶ 8.  Moreover, plaintiff adds: "Defendant Roberts admitted that Plaintiff is owed a commission but has refused to pay same." *Id.* 8; *see also id.* ¶ 20.

On or about December 14, 2013, Sparrows entered into a Purchase & Sale Agreement for the Property, in the amount of $110,000,000.  ECF 26 ¶ 17.   The sale closed in mid-September 2014. *Id.* ¶ 18.   And, on September 12, 2014, Sparrows' Chief Operating Officer, Lydon, informed plaintiff, in correspondence that appears to have been sent by letter and email, that he "'will no longer be employed by Sparrows Point LLC as of the date of closing.'" *Id.* ¶ 19.

Plaintiff attached to his Amended Complaint, as Exhibit 2 (ECF 26-3), Ms. Lydon's correspondence of September 12, 2014, terminating his employment.  It is written on Sparrows' letterhead. *Id.*  Ms. Lydon stated, in part:  "As you are aware, the Sparrows Point site is under contract with the sale expected to close soon. *If* the sale is completed, please be advised that you will no longer be employed by Sparrows Point LLC as of the date of closing."  ECF 26-3.

Additional facts are included in the discussion.

## II.  Standard of Review

Roberts's Motion is predicated on Fed. R. Civ. P. 12(b)(6).  A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, —— U.S. ——, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville,* 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, —— U.S. ——, 135 S. Ct. 346, 346 (2014) (per curiam).

To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).   In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009); *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).   Rule 8(a)(2) demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).   A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555.

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ⸺ U.S. ⸺, 132 S. Ct. 1960 (2012).   The court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243 (quotation marks omitted); *see Houck*, *supra*, 791 F.3d at 484; *Tobey v. James*, 706 F.3d 379, 387 (4th Cir. 2013).   But, "if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint,'" or in other material that is the proper subject of consideration

under Rule 12(b)(6), such a defense can be resolved on the basis of the facts alleged in the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)  (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

Ordinarily, in resolving a motion under Rule 12(b)(6), a court "is not to consider matters outside the pleadings . . . ." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007); *see Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by *Cahaly v. Larosa*, 796 F.3d 399 (2015). If a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  Under certain limited exceptions, however, a court may consider materials extrinsic to the complaint, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).[3]

---

[3] For example, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Id.*; *see* Fed. R. Evid. 201(b) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir.), *cert. denied,* ⸺ U.S. ⸺, 132 S. Ct. 115 (2011). Accordingly, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *cf. Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) (noting that the court may take judicial notice of information on a website, "so long as the web site's authenticity is not in dispute").  However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck*, 708 F.3d at 557.

In addition, and of relevance here, a court may properly consider documents attached to or incorporated into the complaint, as well as documents in connection with the defendant's motion, "'so long as they are integral to the complaint and authentic.'"   *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance* Agency, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).   To be "integral," a document must be one "that by its 'very existence, *and not the mere information it* contains, gives rise to the legal rights asserted.'"   *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point,* LLC, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis added in *Severstal*).

Under Fed. R. Civ. P. 10(c), when an instrument is attached to a pleading as an exhibit, it "is a part of the pleading for all purposes."   Notably, "[w]hen the bare allegations of the complaint conflict with any exhibits or other documents . . . the exhibits or documents prevail." *Fare Deals Ltd. v. World Choice Travel Com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001).

### III.   Choice of Law

The parties have briefed the issues as if Maryland's substantive law governs the resolution of all claims, without any discussion or analysis as to choice of law.

In an action based upon diversity of citizenship, relevant state law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.2d 270, 275 (4th Cir. 2007); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F.Supp.2d 604, 606 (D. Md. 2008).   Notably, "a federal court should not interpret state law in a manner that may appear desirable to the federal court, but has not been approved by the state whose law is at issue." *Rhodes v. E.I. DuPont De Nemours and Co.*, 636 F.3d 88, 96 (4th Cir. 2011).

As to contract claims, Maryland applies the law of the State in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agree to be bound by the law of another state.  *See, e.g.*, *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.,* 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014).  A contract is formed where the last act necessary to make it binding occurs.  *Konover Prop. Trust, Inc. v. WHE Assocs.,* 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citation omitted), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997).  With respect to tort claims, Maryland applies the principle of *lex loci delicti*, *i.e.*, the law of the "place of the alleged harm."  *Proctor v. Washington Metropolitan Area Transit Authority*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010).

Because the parties have relied upon Maryland law and have not identified any relevant legal principles that might differ in other jurisdictions, I will resolve the parties' disputes by applying Maryland law, unless federal law controls.  *See Ohio Savings Bank v. Progressive Cas. Ins. Co.*, 521 F.3d 960, 962 (8th Cir. 2008); *Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 820 (D. Md. 2010).

## IV.   Discussion

As noted, Roberts claims that, as a matter of law, plaintiffs allegations fail to state a claim against him under the MWPCL, or for breach of contract, promissory estoppel/detrimental reliance, and quantum meriut.  He asserts:  "Through the Amended Complaint, Plaintiff attempts to dispense with corporate formalities and hold Mr. Roberts responsible for the alleged obligations of the corporate entities . . . . Maryland law, however, does not permit this."  ECF 29-

9

1 at 1.  Roberts maintains that he engaged in conduct on behalf of the corporate entities, which does not "create individual liability under Maryland law." *Id.* at 2.

Characterizing plaintiff's allegations as "bare-bones and conclusory," *id.*, Roberts asserts that the Amended Complaint "provides only the barest and most general new allegations to support his claims . . . ." *Id.* at 3.  In his view, the allegations do not "plausibly demonstrate that Mr. Roberts either entered into an employment relationship or a contract with Plaintiff ***individually***.  Instead, at most, Plaintiff's allegations reveal that Mr. Roberts merely carried out limited and remote supervisory tasks in his capacity as a member of [Sparrows]." *Id.* at 1-2.

Plaintiff contends, *inter alia*, that he has satisfied the plausibility standard.  ECF 33 at 3.

### A.  Maryland Wage Payment and Collection Law

The parties dispute whether Macsherry has stated a claim in Count I against Roberts, individually, under the Maryland Wage Payment and Collection Law, L.E. §§ 3-501 *et seq.*  In particular, they focus on whether plaintiff has adequately alleged that Roberts was plaintiff's "employer" within the meaning of the MWPCL.  *See* L.E. § 3-501(b).

Among other things, the MWPCL "protects employees from wrongful withholding of wages upon termination." *Stevenson v. Branch Banking and Trust Corporation, t/a BB&T*, 159 Md. App. 620, 635, 861 A.2d 735, 743 (2004) (citing L.E. § 3-505).  "The principal purpose of the Act 'was to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Medex v. McCabe*, 372 Md. 28, 39, 811 A.2d 297, 304 (2002) (citation omitted). The Wage Act does not focus on "the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 373 Md. 501, 513 (2003).

L.E. § 3-505(a), governing payment upon termination of employment, provides, in part:

[E]ach employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.

The MWPCL provides an employee with the right to bring a civil suit against an employer to recover unpaid wages.  *See* L.E. § 3-507.2(a)[4]; *Mohiuddin v. Doctor's Billing & Management Solutions, Inc.*, 196 Md. App. 439, 446, 9 A.3d 859, 863 (2010).  In particular, under the Wage Act, if an employer fails to pay an employee all wages due on termination of employment, "after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages."  L.E. § 3-507.2(a); *see Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 382-83, 780 A.2d 303, 312-13 (2001).  The term "wage" includes commissions; bonuses when they are compensation for services and not a gratuity; and work-related incentive fees.  L.E. § 3-501(c)(2); *see Medex*, 372 Md. at 35-37, 811 A.2d at 302; *Whiting-Turner v. Fitzpatrick*, 366 Md. 295, 306; 783 A.2d 667, 673 (2001).  If "a court finds that an employer withheld the wages of an employee in violation of [the Wage Act] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."  L.E. § 3-507.1(b).

An "employer" within the purview of the Wage Act includes "any person who employs an individual in the State or a successor of the person."  L.E. § 3-501(b).  The term "employ" means "to engage an individual to work," L.E. § 3-101(c)(1), including "allowing an individual

---

[4] This provision was previously codified at L.E. § 3-507.1.  *See* Section 1, Ch. 151, Acts of 2010.

to work" and "instructing an individual to be present at a work site."  L.E. § 3-101(c)(2)(i) and

(ii).  *See also Mohiuddin*, 196 Md. App. at 446, 9 A.3d at 863.  However, a "mere supervisor" is

not an employer within the meaning of the Wage Act.  *Watkins v. Brown*, 173 F. Supp. 2d 409,

415-16 (D.Md. 2001); *see also Bouthner v. Cleveland Construction, Inc.*, RDB-11-244, 2011

WL 2976868, at *7 (D. Md. Jul. 21, 2011); *Hosack v. Utopian Wireless Corp.,* DKC-11-420,

2011 WL 1743297, *5 (D. Md. May 6, 2011).

The Wage Act does not define "employee."  But, in *Ayd*, 365 Md. at 384-85, 780 A.2d at

314, the Maryland Court of Appeals made clear that the Wage Act's provisions extend to

executive and professional employees.  The court stated: "Thus, if the General Assembly had

intended to exclude administrative, executive and professional employees from the provisions of

§§ 3-505 and 3-507.1 [now 3-507.2], or otherwise limit the application of these provisions to that

class of employees, it would have expressly done so.[]"  *Id.* at 385, 780 A.2d at 314.  The court

reasoned that the use of the word "employee" in the statute was meant to distinguish independent

contractors from the traditional common law concept of master/servant.  *Id.* at 387-88, 780 A.2d

at 315-16.

Maryland's "Wage and Hour Law" ("MWHL"), Maryland Code (2008 Repl. Vol., 2014

Supp.), L.E. §§ 3-401, *et seq.*, is not directly at issue here, but is a related statute in Maryland's

wage payment statutory scheme.  The MWHL is the State's equivalent to the federal Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.  *See Newell v. Runnels*, 407 Md. 578, 650,

967 A.2d 729, 771 (2009).  Because the MWHL is often discussed in the context of issues

arising under the MWPCL, I pause to review it.

Generally, the MWHL governs minimum wages and overtime.  *See* L.E. §§ 3-413, 3-415, 3-420.   In contrast, the MWPCL "sets *specific terms* for payment mandated elsewhere in the Wage and Hour Law."  *Campusano v. Lusitano Construction, LLC*, 208 Md. App. 29, 37, 56 A.2.3d 303, 308 (2012) (emphasis in *Campusano*).   Like the MWPCL, the MWHL authorizes an employee to bring an action against an employer to recover unpaid wages due under the statute. L.E. § 3-437.  *See generally Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2005).

The MWHL defines employer to "include[] a person who acts directly or indirectly in the interest of another employer with an employee."  L.E. § 3-401(b).  And, it defines "wage" as "all compensation that is due to an employee for employment."  L.E. § 3-401(c).  The definition of "employer" under the MWHL is "expansive," and is not limited by the common law concept. *Newell*, 407 Md. at 649, 967 A.2d at 773.  Indeed, the *Newell* Court observed that an employee "may have more than one employer at a given time."  *Id.*

Roberts argues that the allegations do not support a claim that he was plaintiff's employer under the MWPCL.  Essentially, he relies on the insulation from personal liability that generally derives from the corporate structure.  But, at least in the context of Maryland cases involving the MWHL and the MWPCL, the usual corporate boundaries do not necessarily insulate Roberts.  In Maryland, in the context of wage payment cases, "'[t]he decisive test in determining the existence of an employer-employee relationship is the right of the employer to control and direct the employee in the performance of the work and in the manner in which the work is to be done.'"  *Mohiuddin, supra*, 196 Md. App. at 446 9 A.3d at 863-64 (citations omitted).   In analyzing the parameters of an "employer" under the MWPCL, so as to assess the sufficiency of

plaintiff's factual allegations, the case of *Campusano v. Lusitano Construction, LLC*, *supra*, 208 Md. App. 29, 56 A.3d 303 (2012), provides guidance.

In that case, Campusano and three other plaintiffs sued *Lusitano Construction, LLC* ("Lusitano"), Geoffrey de Oliveira ("Geoffrey"), and Francisco de Oliveira ("Francisco"), claiming violations of the FLSA as well as the MWPCL. Following a bench trial, the trial court entered judgment against Geoffrey and Lusitano. On appeal, plaintiffs/appellants argued, *inter alia*, that Francisco was also an employer within the meaning of the FLSA and the MWPCL. *Id.* at 33, 56 A.3d at 305. The court's analysis is instructive.

Writing for the Maryland Court of Special Appeals, Judge Matricciani considered, as a matter of first impression in the context of the MWPCL, whether to apply the "four-factor 'economic reality' test of 'control' developed by federal courts for the FLSA and applied [by the Maryland Court of Appeals] in *Newell v. Runnels*, 407 Md. 578, 649-54, 967 A.2d 729, [771-774] (2009) to the Maryland Wage and Hour Law . . . ." *Campusano*, 208 Md. App. at 36, 56 A.3d at 307. The *Campusano* Court concluded that the MWPCL is "sufficiently similar" to the MWHL "for the economic reality test to apply to the analysis of employer" in MWPCL cases. 208 Md. App. at 38, 56 A.3d at 308. Notably, the *Campusano* Court said, *id.* at 38 n.5, 56 A.3d at 308 n.5: "We . . . are not bound to define 'employer' according to the common law because the broad definition of 'employ' in LE § 3-101 (as incorporated by Payment and Collection Law § 501(b)), evinces the legislature's intent to expand the common law definition of 'employer' just as it did with the MWHL. *See Newell*, 407 Md. at 649-50, 967 A.2d 729."

After reviewing the definition of employer in the MWPCL, and the remedial purposes of the MWPCL statute, the *Campusano* Court said, 208 Md. App. at 38, 56 A.3d at 308: "[T]he

reasoning in *Newell* leads us to conclude that the economic reality test governs the definition of 'employer' in Payment and Collection Law § 501(b)." Indeed, the *Campusano* Court expressly disagreed with the U.S. District Court's assertion in *Watkins v. C. Earl Brown, Inc.*, 173 F. Supp. 2d 409, 416 (D. Md. 2001), that the expansive definition of the term "employer" in the FLSA "cannot be substituted for the more restrictive definition set forth in the [Payment and Collection Law]." *Campusano*, 208 Md. App. at 38 n.5, 56 A.3d at 308 n.5.

However, the *Campusano* Court recognized that there is "more than one incarnation of the 'economic reality' test.[]" 208 Md. App. at 38-39, 56 A.3d at 309. Because there was "insufficient evidence that Francisco personally benefitted from appellants' labor . . . .", *id.* at 39, 56 A.3d at 309, the court focused on the four-factor economic reality test for "control" that the Maryland Court of Appeals had applied in *Newell* in the context of the MWHL.

In *Newell*, 407 Md. at 651, 967 A.2d at 772, the court identified a four-factor test "for formal control" as "the most appropriate" version of the economic reality test. The pertinent considerations are "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2nd Cir. 2008)). But, the *Newell* Court also recognized that "[t]he economic reality test is fluid and often articulated differently by different courts." 407 Md. at 651, 967 A.2d at 772. Similarly, the *Campusano* Court underscored that the factors of control "are not to be applied mechanistically, and their general purpose must be understood as ultimately assigning *responsibility* under the law." 208 Md. App. at 40, 56 A.3d at 310 (emphasis in *Campusano*).

The *Campusano* Court was also guided by First Circuit's decision in *Baystate Alternative Staffing v. Herman*, 163 F.3d 668 (1st Cir. 1998), a FLSA case.  *See* 208 Md. App. at 40, 56 A.3d at 310.  *Baystate* is illuminating.

In *Baystate*, the First Circuit identified "relevant indicia" of control, such as "an individual's operational control over significant aspects of the business and an individual's ownership interest in the business . . . ."  *Id.* at 678.  It said, *id.*:  "Such indicia, while not dispositive, are important to the analysis, because they suggest that an individual controls the corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA."  *Id.*

Notably, in the context of FLSA and individual defendants, the *Baystate* Court observed that "the language of [FLSA] does not support the proposition that officers of a corporation can never be held personally liable for unpaid wages, and . . . that Congress intended the FLSA's reach to transcend traditional common law parameters of the employer-employee relationship."  *Id.* at 677 (citing *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983)).  In determining personal liability, a court must look to the "economic reality" of the situation, rather than to "technical" common law concepts."  *Id.* (citing *Agnew*, 712 F.2d at 1514).  In this regard, the court noted the relevance of "the significant ownership interest of the corporate officers; their operational control of significant aspects of the corporation's day to day functions, including compensation of employees[]; and the fact that they personally made decisions to continue operating the business despite financial adversity and the company's inability to fulfill its statutory obligations to its employees."  *Baystate*, 163 F.3d at 677-78.

Maryland continues to adhere to the decision in *Campusano*. The case of *Pinsky v. Pikesville Recreation Council, Inc.*, 214 Md. App. 550, 588, 78 A.3d 471, 493 (2013), was decided by the Maryland Court of Special Appeals about a year after *Campusano*. There, the Court reiterated that the economic reality test for an alleged employer's control over an employee determines whether a person or entity is an employer under the MWPCL.

Moreover, several other judges of this Court have applied the economic realities test in the context of claims under the MWPCL, MWHL, and FLSA. *See*, *e.g.*, *Coles v. Von Paris Enterprises, Inc.*, PJM 14-450, 2014 WL 6893861, at *3 (D. Md. Dec. 3. 2014) (recognizing that "Maryland courts give broad interpretation to the term 'employer' in the context of Maryland wage and hour law to 'effectuate the FLSA's broad remedial purposes'" and applying the four-pronged economic realities test to determine whether an individual constitutes an employer) (citation omitted); *Iraheta v. Lam Yuen, LLC*, DKC-12-1426, 2012 WL 5995689 (D. Md. Nov. 29, 2012); *Caseres v. S & R Mgt. Co., LLC*, AW-12-1358, 2012 WL 5250561 (D. Md. Oct. 24, 2012); *Khalil v. Subway at Arundel Mills Office Park, Inc.*, CCB-09-158, 2012 WL 231793 (D. Md. Jan. 24, 2011).

Under this test, "[n]o single factor is dispositive; rather, the totality of the circumstances must be considered." *Iraheta*, 2012 WL 5995689, at *3; *see Speert v. Proficio Mortg. Ventures, LLC*, JKB-10-713, 2011 WL 2417133, at *3 (D. Md. Jun. 11, 2011). Therefore, as Judge Chasanow noted in *Iraheta*, "an individual defendant's status as a high-level corporate shareholder or officer does not necessarily impart 'employer' liability to that individual; the analysis turns on the economic realities of the individual's relationship with the putative

employee." *Iraheta* at *3 (citing *Pearson v. Prof'l 50 States Prot., LLC*, RDB-09-232, 2010 WL 4225533, at *4 (D. Md. Oct. 26, 2010)).

In *Iraheta*, the plaintiff brought wage claims against an LLC and two individuals under FLSA, the MWHL, and the MWPCL. The defendants moved to dismiss. With regard to the individual defendants, the complaint alleged that both were members, directors, officers, and owners of the LLC. Judge Chasanow said: "Other than that, Plaintiff does not make any specific allegations with respect to actions undertaken by [them] in their individual capacities." *Iraheta*, 2012 WL 5996689, at *4. The Court relied on *Watkins*, *supra*, 173 F. Supp. 2d 409 (with which the *Campusano* Court disagreed) for the proposition that the definition of employer is more restrictive under the MWPCL than in FLSA or the MWHL. *Id.* at *4. And, it said, *id.*: "[A]n individual's status as corporate officer is not, without more, sufficient to establish liability as an employer the FLSA, the MWHL, or the MWPCL." *Id.*

Nevertheless, and of import here, Judge Chasanow focused on the plaintiff's assertion that "*all* Defendants collectively took the following actions: employed her as a 'bakery prep and cook/utility person'; paid her in cash [for less hours than she worked]; willfully and intentionally failed to properly compensate her for the minimum and overtime wages to which she was entitled . . . ." *Id.* (emphasis in *Iraheta*). Noting that, with respect to a motion to dismiss, a court is required to construe a complaint in the light most favorable to a plaintiff, Judge Chasanow "presumed that these allegations apply equally to [the two individual defendants] in their individual capacities." *Id.* Significantly, she said, *id.*: "Construed as such, these allegations state a plausible claim for relief that [the individual defendants] are individually liable as 'employers' for violating" the provisions of all three statutes. *Id.*

The reasoning of these cases makes clear that in Maryland wage payment cases the term "employer" is a broad concept, and its meaning is not restricted by traditional corporate protections.  Looking to the totality of circumstances, "the analysis turns on the economic realities of the individual's relationship with the putative employee."  *Iraheta*, 2012 WL 5995689, at *3.

Macsherry alleges that Roberts was the President and Managing Member of Sparrows, as well as Principal, President and Co-Owner of CGC.  Therefore, Roberts had a financial interest and managerial duties as to both business entities.  *See Campusano*, 208 Md. App. at 40, 56 A.3d at 310.  In addition, plaintiff claims that he was hired and fired by Roberts.  He also alleges that Roberts supervised and controlled his employment, including as to the payment of wages in general and in particular the commission at issue.

Ultimately, Macsherry may not prevail in his MWPCL claim against Roberts.  But, in the present posture of the case, applying the law to the facts as alleged, in the light most favorable to plaintiff, I am readily satisfied that the MWPCL claim (Count I) as to Roberts, individually, survives dismissal.

## B.  Contract

Roberts has moved to dismiss plaintiff's claim in Count II for breach of contract.  According to Roberts, the Amended Complaint "does not allege that Mr. Roberts was [a] party to the alleged contract . . . or that Mr. Roberts and Plaintiff reached any other contractual agreement."  ECF 29-1 at 8.

Plaintiff alleges that he was "informed by Defendants that Defendant Michael Roberts would sign the contract."  ECF 26 ¶ 12; *see also* ECF 33 at 4, 9.  However, he avers that he has

never been provided with a copy of a "fully executed version of the Contract . . . ."  ECF 26 ¶ 12; ECF 33 at 5.  He argues (ECF 33 at 10) that his allegations are sufficient to support the claim that "Defendant Robert [sic] bound <u>himself</u> to the Contract. . . ."  In plaintiff's view, this Court cannot accept Roberts's mere assertion that he acted in a representative capacity.  *Id.*[5]

Generally, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty."  Richard A. Lord, 1 Williston on Contracts § 1:1, at 2-3 (4th ed. 1990); accord Restatement (Second) Contracts § 1, at 5 (1981).  *See also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421-22, *cert. denied*, 393 Md. 478 (2006).  "A contract is formed when an unrevoked offer made by one person is accepted by another."  *Prince George's County v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984).  Thus, mutual assent is an integral component of every contract.  *Lacy v. Arvin*, 140 Md. App. 412, 426, 780 A.2d 1180, 1188 (2001); *Kiley v. First National Bank of Maryland*, 102 Md. App. 317, 333, 649 A.2d 1145, 1152 (1994), *cert. denied*, 338 Md. 116, 656 A.2d 772 (1995), *cert. denied*, 516 U.S. 866 (1995).  *See also Mitchell v. AARP*, 140 Md. App. 102, 116 (2001) ("An essential element with respect to the formation of a contract is '"a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms."'") (quoting *Safeway Stores, Inc. v. Altman*, 296 Md. 486, 489, 463 A.2d 829, 831 (1983)) (other citations omitted).

---

[5] Notably, plaintiff does not argue the existence of an implied contract, arising from the parties' conduct.  *See* ECF 33 at 9-10 (discussing contract claim); *see, e.g.*, *Mogavero v. Silverstein*, 142 Md. App. 259, 275, 790 A.2d 43, 52 (2002), *cert. denied*, 369 Md. 181, 798 A.2d 553 (2002).

A contract may be oral or written, as well as express or implied.  "An express contract has been defined as 'an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'"  *County Commissioners of Caroline County v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606  (2000) (quoting Black's Law Dictionary 323 (6th ed. 1990)).

Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement.  *Mogavero v. Silverstein,* 142 Md. App. 259, 272, 790 A.2d 43, 50 (2002), *cert. denied*, 369 Md. 181, 798 A.2d 553 (2002); *see Canaras v. Lift Truck Services*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974).  If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable.  *Mogavero*, 142 Md. App. at 272; *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967); *Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287, 290 (1956) (stating that a "contract may be so vague and uncertain as to price or amount as to be unenforceable.").

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."  *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001); *see RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010).  In other words, "[i]t is the parties' agreement that ultimately determines whether there has been a breach."  *Mathis v. Hargrove*, 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005).  In *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012), the Maryland Court of Appeals said:  "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity

allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" (Citation omitted); *see also Robinson v. GEO Licensing Co., L.L.C.*, 173 F. Supp. 2d 419, 423 (D. Md. 2001).

Here, plaintiff alleges that, "on information and belief," Roberts "signed the contract governing Plaintiff's employment. . . ." ECF 26 ¶ 8.  He also claims he was "informed" that "Roberts would execute the contract." *Id.* ¶ 12.  But, the Amended Complaint is devoid of allegations to show that, by its terms, Roberts was a party to ECF 26-2.  Nor does the Amended Complaint contain factual allegations to the effect that, even if Roberts signed ECF 26-2, he did so in his personal capacity, rather than as an agent for a business entity.

Notably, "'a corporation must of necessity act through its agents. . . .'" *Southern Management Corp. v. Taha*, 378 Md. 461, 480, 836 A.2d 627, 638 (2003) (citation omitted). Moreover, under Maryland law, a member of a limited liability company is not "personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company."  Md. Code (2014 Repl. Vol.), § 4A-301 of the Corporations & Associations Article.  Under Maryland law, "a person cannot be held liable under a contract to which he was not a party. . . ." *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 316, 728 A.2d 783, 794 (1999).

In the context of the contract claim, the allegations suggest, at best, that if Roberts signed the Contract, he acted on behalf of Sparrows.  The conclusory assertions in the Opposition, to the effect that Roberts acted individually, are not sufficient to state a contract claim.

Nor does the Amended Complaint attempt to state a claim to pierce the corporate veil.  A party may seek to pierce the corporate veil when "'necessary to prevent fraud or enforce a paramount equity.'"  *Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. 724, 733, 838 A.2d 1204, 1209 (2003) (citations omitted).  But, in Maryland "the fiction of the wholly separate corporate form is jealously guarded . . . ."  *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (D. Md. 2011).  Indeed, "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil."  *Residential Warranty Corp.*, 126 Md. App. at 309, 728 A.2d at 790-91.  The "[p]ower to pierce the corporate veil is to be exercised 'reluctantly' and 'cautiously,'"  *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Co.*, 540 F.2d 681, 683 (4th Cir. 1976) (citation omitted), and the challenge facing a party seeking to pierce the corporate veil has been described as "herculean."  *Dixon v. Process Corp.*, 38 Md. App. 644, 645-46, 382 A.2d 893, 894-95 (1978) ("A commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving maximum profit with a minimum exposure to liability[] . . . [W]oe unto the creditor who seeks to rip away the corporate façade. . . .").

The Amended Complaint does not allege facts that state a claim for piercing the corporate veil with respect to plaintiff's contract claim.  The case concerns a wage dispute; there are no allegations of fraud or paramount equity.[6]

---

[6] Notably, "[d]espite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil for reasons other than fraud have failed in Maryland Courts."  *Residential Warranty Corp.*, 126 Md. App. at 307, 728 A.2d at 789; *accord Ramlall v. MobilePro Corp.*, 202 Md. App. 20, 31, 30 A.3d 1003, 1009 (2011).  The Maryland Court of Special Appeals has said that, "'[n]otwithstanding its hint that enforcing a paramount equity might suffice as a reason for piercing the corporate veil, the Court of Appeals to date has not elaborated upon the meaning of this phrase or applied it in any case of

In sum, Count II of the Complaint falls well short of pleading a contract between plaintiff and Roberts, individually, so as to render plaintiff's breach of contract claim a plausible one as to Roberts.  *See Twombly*, 550 U.S. at 570.  Dismissal of the contract claim as to Roberts is warranted.

### C. Promissory Estoppel

The parties dispute whether plaintiff has stated a claim against Roberts in Count III for promissory estoppel/detrimental reliance.

Roberts urges dismissal, claiming Count III "fails to provide any new allegations of a 'clear and definite' promise made by Mr. Roberts in his personal capacity or any resulting detriment."  ECF 29-1 at 10.  Moreover, Roberts points out that plaintiff merely alleges "boilerplate contentions" that he is owed a commission, and Roberts's alleged promise "was after the fact and there was no reliance on any such statement.  *Id.* at 11.

Plaintiff counters that he "has sufficiently alleged a promise" (ECF 33 at 11), and points to the terms of the putative contract, which provided for "a yearly salary of $77,000 and a commission of 75 basis points (0.75%) on the total value of any sales on any deals closed after

which we are aware.'"  *Residential Warranty Corp.*, 126 Md. App. at 307 (quoting *Travel Committee, Inc. v. Pan American World Airways, Inc.,* 91 Md. App. 123, 158, 603 A.2d 1301, 1318 (1992), *cert. denied*, 327 Md. 525, 610 A.2d 797 (1992)).  *See also Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 312, 340 A.2d 225, 235 (1975) (finding no paramount equity to justify piercing the corporate veil, although the individual defendants commingled the equipment of the three subject corporations, operated from a single place of business, made personal loans and transferred insurance policies to themselves, and permitted one corporation to become "all but insolvent" while enriching the other two in order to evade legal obligations asserted in an action against the corporation); *Serio v. Baystate Properties, LLC*, 209 Md. App. 545, 60 A.3d 475 (2013) (stating that the paramount equity standard "has been so narrowly construed that neither [the Maryland Court of Special Appeals] nor the [Maryland] Court of Appeals has ultimately 'found an equitable interest more important than the state's interest in limited shareholder liability.'"[1]  *Id.* at 559-60, 60 A.3d at 484 (citation omitted)).

December 10, 2012." Amended Complaint, ECF 26 ¶ 34; ECF 33 at 11. Moreover, plaintiff

maintains that he adequately alleged that he suffered a detriment based on Roberts's failure to

honor his clear and definite obligation. ECF 33 at 11. In particular, plaintiff points out that he

"performed the services set forth in the Contract . . . which should have resulted in a commission

to plaintiff." ECF 33 at 11-12; *see also* ECF 26 ¶¶ 36-39.

"[I]n Maryland, promissory estoppel is an alternative means of obtaining contractual

relief." *Maryland Transp. Auth. Police Lodge #34 of the Fraternal Order of Police, Inc. v.*

*Maryland Transp. Auth.,* 195 Md. App. 124, 215, 5 A.3d 1174, 1227 (2010), rev'd on other

grounds, 420 Md. 141, 21 A.3d 1098 (2011); *see also Pavel Enterprises, Inc. v. A.S. Johnson*

*Co.,*, 342 Md. 143, 169, 674 A.2d 521, 534 (1996) ("[T]here are different ways to prove that a

contractual relationship exists . . . . Traditional bilateral contract theory is one. Detrimental

reliance [a.k.a. promissory estoppel] can be another."); *Suburban Hosp., Inc. v. Sampson*, 807 F.

Supp. 31, 33 (D. Md. 1992) (applying Maryland law, and stating that "the nature of a lawsuit in

which promissory estoppel is invoked remains that of an action to enforce a contract").

The elements of a promissory estoppel or detrimental reliance claim in Maryland were

established in the touchstone case of *Pavel Enterprises, Inc.*, 342 Md. at 166, 674 A.2d at 533:

1. a clear and definite promise;
2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
3. which does induce actual and reasonable action or forbearance by the promisee; and
4. causes a detriment which can only be avoided by the enforcement of the promise.[]

*Accord Citiroof Corp. v. Tech Contracting Co., Inc.*, 159 Md. App. 578, 589, 860 A.2d 425, 432

(2004); *Konover Prop. Trust, Inc., supra*, 142 Md. App. at 484, 790 A.2d at 724.

Under Maryland law, a promissory estoppel claim for money damages is a claim at law. *Ver Brycke v. Ver Brycke*, 379 Md. 669, 698, 843 A.2d 758, 775 (2004) (stating that plaintiffs' unjust enrichment and promissory estoppel claims "were claims at law because they were claims seeking the remedy of restitution for money").  In *Ver Brycke*, 379 Md. at 693, n.9, 843 A.2d at 772 n.9, the Maryland Court of Appeals characterized promissory estoppel as a "quasi-contract" claim, and noted: "'The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'"  *Id.* (quoting *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96, 747 A.2d 600, 607 (2000)).

Here, plaintiff relies on a written employment contract.  *See* ECF 26-2.  But, defendant disputes that plaintiff in fact entered into a valid contract with defendant.  And, Rule 8(d)(3) permits a party to "state as many separate claims . . . as it has, regardless of consistency."  Although a plaintiff "may not recover under both contract and quasi-contract theories, [he] is not barred from pleading these theories in the alternative. . . ."  *Swedish Civil Aviation Administration v. Project Management Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002).

However, the question here is whether plaintiff has alleged facts sufficient to state a claim against Roberts in Count III, based on promissory estoppel.  For the reasons that I previously articulated, I am satisfied that the allegations are deficient as to plaintiff's promissory estoppel claim against Roberts in his individual capacity.  Among other things, plaintiff has not alleged that Roberts personally made any "clear and definite promise" to him on which plaintiff relied to his detriment.  The alleged after-the-fact admission by Roberts that plaintiff is owed

money does not constitute a promise that induced plaintiff to perform; by then plaintiff had already performed.

### C.  Quantum Meruit

Roberts contends that plaintiff has failed to state a claim in Count IV for quantum meruit, because the Amended Complaint "does not allege that Plaintiff rendered any services to Mr. Roberts personally."  ECF 34 at 10.  Roberts asserts, *id.*  "To the extent Plaintiff performed pursuant to the purported employment contract, he did so for the benefit of Sparrows Point LLC, his employer and the owner of the Property that was sold on or about December 14, 2013."  *See also* Amended Complaint, ECF 26 ¶ 16.  Defendant also maintains that Macsherry "has not properly alleged the existence of an implied-in-fact contract flowing from his and Mr. Robert's conduct."  ECF 34 at 10.

Plaintiff points out that the Complaint contains a claim for quantum meruit as an alternative to the breach of contract claim.  ECF 33 at 12, Opposition.  *See*  Fed. R. Civ. P. 8(d)(2); Fed. R. Civ. P. 8(d)(3).  And, he insists that he has properly pleaded such a claim.

Both sides recognize that there are two avenues of recovery with respect to a claim for quantum meruit:  an implied-in-fact contract and a quasi-contract, *i.e.*, a contract implied by law. These terms have "distinct meanings."  *J. Roland Dashiell & Sons, Inc., supra*, 358 Md. at 95 n.6, 747 A.2d at 606 n.6; *see Alternatives Unlimited, Inc. v. New Baltimore City Board of School Comm'rs*, 155 Md. App. 415, 482-87, 843 A.2d 252 (2004); *Mohiuddin, supra*, 196 Md. App. at 447, 9 A.3d at 864.

 "'Quasi-contracts have often been called implied contracts or contracts implied in law[.]'"  *Mohiuddin*, 196 Md. App. at 449, 9 A.3d at 865 (quoting Restatement (Second) of

Contracts, § 4 (1981)); *accord J. Roland Dashiell & Sons, Inc.,* 358 Md. at 95 n.6, 747 A.2d at

606 n.6 ("A contract implied by law is now what commonly is called quasi-contract . . . .");

*Mogavero*, 142 Md. App. at 274-76, 790 A.2d at 51-53.  However, "'unlike true contracts, quasi-

contracts are not based on the apparent intention of the parties to undertake the performances in

question, nor are they promises.  *They are obligations created by law for reasons of justice.*'"

*Mohiuddin*, 196 Md. App. at 449, 9 A.3d at 865 (citation omitted) (emphasis added in

*Mohiuddin*).  In other words, "[t]o prevent unjust enrichment, the law created a contract, as an

unabashed legal fiction."  *Alternatives Unlimited*, 155 Md. App. at 472, 843 A.2d at 286.

     In *Alternatives Unlimited*, 155 Md. App. at 480, 843 A.2d at 290, the Maryland Court of

Special Appeals explained as to quasi-contracts:

> "A quasi-contract or *implied in law contract* . . . *involves no assent between the
> parties, no* "*meeting of the minds.*"  Instead the law implies a promise on the part
> of the defendant to pay a particular "debt."  Thus, "[*t*]*he implied in law contract is
> indeed no contract at all*, it is simply a rule of law that requires restitution to the
> plaintiff of something that came into defendant's hands but belongs to the plaintiff
> in some sense."  (Quoting *Mass Transit Administration v. Granite Construction
> Co.*, 57 Md. App. 766, 775, 471 A.2d 1121, 1125-26 (1984) (emphasis added in
> *Alternatives Unlimited*)).

     In contrast, "[a]n implied-in-fact contract is a 'true contract' and 'means that the parties

had a contract that can be seen in their conduct rather than in an explicit set of words.'"

*Mogavero*, 142 Md. App. at 275, 790 A.2d at 52 (citation omitted).  Put another way, "[a]n

implied by fact contract is 'inferred from conduct of parties and arises where plaintiff, without

being requested to do so, renders services under circumstances indicating that he expects to be

paid therefore, and defendant, knowing such circumstances, avails himself of [the] benefit of

those services.'"  *J. Roland Dashiell & Sons, Inc.,* 358 Md. at 95 n.6, 747 A.2d at 606 n.6

(citation omitted).

"[A] quasi-contractual *quantum meruit* claim is identical to a charge of unjust enrichment . . . ." *Mohiuddin*, 196 Md. App. at 447, 9 A.3d at 864. "A claim of unjust enrichment . . . is not based on contract . . . .  It is based on quasi-contract, and a quasi-contract, notwithstanding its name, is not a real contract." *Alternatives Unlimited, Inc.*, 155 Md. App. at 494, 843 A.2d at 298.  Unjust enrichment and quantum meruit are causes of action that "'are remedies to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.'" *J. Roland Dashiell & Sons, Inc.,* 358 Md. at 96-97, 747 A.2d at 607 (quoting *Dunnaville v. McCormick & Co.*, 21 F. Supp. 2d 527, 535 (1998)).

In Maryland, "[a] claim of unjust enrichment is established when: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 389 Md. 615, 651-52, 887 A.2d 525, 546 (2005) (citation omitted); *see also Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295, 936 A.2d 343, 351 (2007); *J. Roland Dashiell & Sons, Inc.,* 358 Md. at 95 n.7, 747 A.2d at 607 n.7; *Jackson v. 2109 Brandywine, LLC,* 180 Md. App. 535, 574, 952 A.2d 304, 327, *cert. denied*, 406 Md. 444, 959 A.2d 793 (2008); *Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d 785, 792-93 (D. Md. 2002).

"A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no

demonstrable losses.'" *Hill*, 402 Md. at 295-96, 936 A.2d at 352 (citation omitted); *see also*

*Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151, 757 A.2d 108, 113 (2000).  But, "[g]enerally,

courts are hesitant to deviate from the principle of the rule and allow unjust enrichment claims

only when there is evidence of fraud or bad faith,[] there has been a breach of contract or a

mutual rescission of the contract, when rescission is warranted,[] or when the express contract

does not fully address a subject matter.[]"  *J. Roland Dashiell & Sons, Inc.*, 358 Md. at 100, 747

A.2d at 608-09.

Notably, because a quasi-contractual quantum meruit claim is not based on an actual

contract, a claim for unjust enrichment is not viable when the subject matter of a claim is

governed by an express contract between the parties.  *See Janusz v. Gilliam*, 404 Md. 524, 537,

947 A.2d 560, 567 (2008) ("In Maryland, a claim of unjust enrichment, which is a quasi-contract

claim, may not be brought where the subject matter of the claim is covered by an express

contract between the parties.") (Internal quotation marks omitted); *J. Roland Dashiell & Sons,*

*Inc.*, 358 Md. at 101, 747 A.2d at 610 ("We hold that, generally, quasi-contract claims such as

quantum meruit and unjust enrichment cannot be asserted when an express contract defining the

rights and remedies of the parties exists."); *see also FLF, Inc. v. World Publications, Inc.*, 999 F.

Supp. 640, 642 (D. Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for

unjust enrichment may not be brought where the subject matter of the claim is covered by an

express contract between the parties.").

As I have indicated, plaintiff has not adequately alleged an express contract with Roberts,

individually.  Nor do the allegations show that the conduct of Roberts and Macsherry created an

implied contract.  *See Mogavero*, 142 Md. App. at 275, 790 A.2d at 52.  Therefore, there is no basis for quantum meruit relief under an implied-in-fact contract.

Nor has plaintiff alleged facts sufficient to support a claim against Roberts for quasi-contractual quantum meruit (unjust enrichment).  As the *Mohiuddin* Court observed in that case, involving the MWPCL and a motion to dismiss a claim for unjust enrichment, the "complaint fails to assert that [the defendant] was enriched as a result of circumstances, such as fraud or misrepresentation, that might make it inequitable for [him] to retain the value of [plaintiff's] services without paying for them."  196 Md. App. at 450, 9 A.3d at 866.

The claim for quantum meruit (Count IV) shall be dismissed as to Roberts.

An Order follows.

Date:   October 23, 2015                                     /s/

                                        Ellen L. Hollander
                                        United States District Judge