IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN H. MACSHERRY, JR.,

    *Plaintiff*,

v.

    Civil Action No. ELH-15-22

SPARROWS POINT, LLC, et al.

    *Defendants*.

## MEMORANDUM OPINION

John Macsherry, Jr., plaintiff, filed suit against defendants Sparrows Point, LLC ("Sparrows Point" or "SPLLC"); Commercial Development Company, Inc. ("CDC"); and Michael Roberts, to recover a commission of $825,000 in connection with commercial property that sold for $110,000.00.  *See* ECF 2.[1]  Plaintiff seeks relief under the Maryland Wage Payment and Collection Law ("MWPCL"), Maryland Code (2016 Repl. Vol.) §§ 3-501 *et seq.* of the Labor and Employment Article, as well as under theories of breach of contract; promissory estoppel/detrimental reliance; and quantum meruit.  *See* ECF 2.

In this Memorandum Opinion, I consider "Plaintiff's Motion to Amend His First Amended Complaint and to Reopen Discovery Limited to the Issue of Fraudulent Conveyance" (ECF 47).  It is supported by a legal memorandum (ECF 47-1) (collectively, "Motion to Amend") and numerous exhibits.  ECF 47-2 through ECF 47-12.[2]  In the Motion to Amend,

---

[1] Suit was filed in the Circuit Court for Baltimore County in November 2014.  ECF 2. Defendants removed the case to this Court on January 6, 2015, pursuant to 28 U.S.C. §§ 1332 and 1441.  ECF 1.

[2] Initially, plaintiff filed the Motion to Amend, the memorandum of law, and all exhibits under seal.  As to all but two documents, the seal has since been lifted, and redacted versions of the sealed documents have been filed.  *See* ECF 47; ECF 47-1 to ECF 47-13; ECF 47-14; ECF 47-15; ECF 52; ECF 53; ECF 54.

plaintiff seeks to file a Second Amended Complaint to add a new defendant and a new claim.  He also appends several new exhibits.  *See* ECF 47-3.  Defendants oppose the Motion to Amend (ECF 48, "Opposition") and Macsherry has replied.  ECF 49 ("Reply").  In addition, I also resolve "Defendants' Motion for Leave to File Sur-Reply."  ECF 50 ("Motion for Surreply").  The proposed Surreply is at ECF 50-1.  Macsherry responded on May 9, 2016 (ECF 51, "Response").  Defendants did not reply, and the time to do so has expired.

The motions have been fully briefed and no hearing is needed to resolve them.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion for Surreply and I shall deny the Motion to Amend.

## I.  Factual and Procedural Background[3]

In the First Amended Complaint (ECF 26), Macsherry alleges that he was employed jointly by Sparrows Point and CDC, as Vice President of Leasing and Development.  ECF 26 ¶¶ 1, 12.  He avers that Roberts is an owner of both Sparrows Point and CDC.  ECF 47-2 at 3.  Sparrows Point is a single-purpose Missouri LLC that was "formed to acquire 3,100 acres of real property located at the Sparrows Point peninsula in Baltimore County, formerly the site of the industrial complex owned by Bethlehem Steel."  ECF 48 at 3.  CDC is a Missouri corporation that shares common management and human resources personnel with Sparrows Point.  ECF 26 ¶ 5.  Roberts, a Missouri resident, leads both entities.  *Id.* ¶¶ 5, 6.  Macsherry "reported to Robert

---

[3] To the extent relevant, I incorporate here the factual summary set forth in my earlier opinion.  *See* ECF 38.  In view of the issues presented in the motions, I need not recount a detailed summary of the factual allegations.

To the extent relevant, I incorporate here the factual summary set forth in ECF 38. Therefore, I need not recount a detailed summary of the factual allegations.

Schoelch, Vice President of Defendant Commercial Development, until Mr. Schoelch left the company in April 2014." *Id.* ¶ 7.

According to plaintiff, he was employed by both Sparrows Point and CDC, either directly, as a single enterprise, or as joint employers. *Id.* ¶ 8. In addition, he asserts that Roberts was his employer "by virtue of his leadership role with each entity and his direction and control over employment decisions, including the payment of wages . . . and the payment of the commission at issue . . . ." *Id.*

Macsherry asserts that in December 2012, "Defendants presented Plaintiff Macsherry with a contract of employment . . . ." *Id.* ¶ 12. Subsequently, Macsherry received an edited copy of the document (the "Contract").[4] At his deposition, Schoelch recalled that he had drafted the Contract. *See* ECF 26-2; ECF47-4 at 14-17. The Contract outlined Macsherry's duties, as "Vice President of Leasing and Development—Sparrows LLC." ECF 26-2 at 2. He would, *id.*:

> Be directly responsible for the marketing and brokerage efforts for the property; work directly with listing broker and general counsel to negotiate lease and sale contracts. Work with community organizations to increase the awareness of property; be point person to identify international customers and port related users for the site.

> Be responsible for identifying appropriate local and state economic development packages/incentives; understanding the appropriate brown field entitlements and subsidies; work with Site Manager to address master plan issues including utility services, rail issues, zoning/subdivision issues, RET appeals, etc.

In addition, the Contract included that Macsherry's salary would be $77,000 per year and that Macsherry would be entitled to a commission of "75 basis points paid on the total value of any sales/leases or parcels on any deals closed after the Start Date, Lafarge and Fritz deals

---

[4] The term "Contract" is used here solely for the purpose of identifying the relevant document. ECF 26-2. It does not reflect a determination that the document is a valid, executed, enforceable contract.

excluded." *Id*. The draft included a start date of "TBD," but Schoelch changed it to December 10, 2012. *Id*.

Macsherry alleges that he signed the Contract in Saint Louis during a meeting with Rebecca Lydon, the Chief Operating Officer of CDC and Sparrows Point. ECF 47-6 at 12-16.[5] Lydon advised Macsherry that she would have Roberts sign the Contract and that she would send him a copy. *Id*. at 16. Macsherry never received a signed copy, however. *See* ECF 47-6 at 16; ECF 48-1 at 1-2.

On September 9, 2014, Macsherry emailed a copy of the Contract to Lydon. *See* ECF 47-3 at 31-34. On September 12, 2014, Macsherry received a letter from Lydon. ECF 26-3 at 2. The top of the stationery contains the moniker, "Sparrows Point LLC." *Id*. Lydon stated, in pertinent part, *id*. (emphasis in original):

> As you are aware, the Sparrows Point site is under contract with the sale expected to close soon. **If** the sale is completed, please be advised that you will no longer be employed by Sparrows Point LLC as of the date of closing.
>
> All payroll earned to the closing date will be paid as well as any vacation time earned but not yet taken on the next regular payroll date.

Macsherry asserts, ECF 26 ¶ 20: "Following the September 12, 2014 letter, Plaintiff Macsherry inquired several times regarding the status of his commission of .75% of the sale value." Lydon stated at her deposition that she took a copy of the email that Macsherry had sent her on September 9, 2014, and put it on Roberts's desk. ECF 47-8 at 3-4. Later that afternoon, Lydon sent an email to Roberts and three others, stating, ECF 47-9 (emphasis in original): "John MacSherry [sic] is trying to get a hold of me--I am NOT returning the call, just so you know." Macsherry followed up with Lydon by email on September 13, 2014, and again on September

---

[5] In Macsherry's deposition excerpt (ECF 47-6), I am unable to locate testimony as to when plaintiff claims to have signed the Contract.

17, 2016, requesting information about his commission.  *See* ECF 47-1 at 9; ECF 47-3 at 36. Macsherry also claims that he tried to reach Roberts by phone and by email on September 10, 2014.  *See* ECF 47-1 at 9; ECF 47-10.

Sparrows Point sold the property for $110,000,000 in a transaction that closed on September 17, 2014.  ECF 47-7 at 12.  Roberts testified at his deposition that, within a week or two of the closing, most of the net proceeds of sale were disbursed.  *Id.* at 14-15.  Macsherry maintains that the transfer was made even though defendants knew of plaintiff's claim for a commission.  ECF 47-1 at 6.  Although Roberts initially denied that he knew of Macsherry's claim as of the time of the transfer of funds, he subsequently acknowledged that he previously had a conversation with plaintiff about his claim.  Roberts said, *id.* at 13:  "But . . . at that point . . . we didn't know if he was serious or not."[6]

Macsherry again tried to reach Roberts on September 19, 2014 (ECF 47-11), and finally spoke with Roberts on September 25, 2014.  ECF 47-1 at 9.  Macsherry testified at his deposition that Roberts indicated that he did not think Macsherry deserved as big a commission as was promised in the Contract, and that he would contact Macsherry later with another offer.  ECF 47-6 at 18.  Macsherry sent an email to Roberts the same day, referencing the telephone call and including as an attachment the Contract negotiated in December 2012.  ECF 47-12.  On the same date, Roberts forwarded the email to his brother, Thomas Roberts, and wrote:  "Need to discuss[.]"  *Id.*  According to plaintiff, Roberts never contacted Macsherry to discuss a settlement.  ECF 47-1 at 9.  Roberts testified at his deposition that he told Thomas Roberts, at a meeting soon after:  "I'm sure [the dispute] is going to end up in litigation . . . ."  ECF 47-7 at 10-11.  Moreover, Thomas Roberts knew of the Contract.  *Id.* at 11.

---

[6] At this juncture, the parties have agreed to the confidentiality of the amount of the net proceeds.  But, the net proceeds exceed the disputed commission.

This suit followed.  In response, defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 9.  By Order of May 21, 2015 (ECF 19), I denied the motion as to Sparrows Point and CDC, but granted the motion with respect to the claims against Roberts, with leave to amend.

I issued a Scheduling Order on July 2, 2015 (ECF 21), which set July 31, 2015, as the deadline for the amendment of pleadings and October 29, 2015, as the deadline for discovery. *Id.*  Plaintiff filed his First Amended Complaint (ECF 26) on July 7, 2015, renewing his claims against Roberts.  *Id.*  CDC and Sparrows Point timely answered (ECF 28), but Roberts again moved to dismiss, pursuant to Rule 12(b)(6).  ECF 29.  By Memorandum Opinion and Order of October 23, 2015 (ECF 38; ECF 39), I dismissed the claims against Roberts, with the exception of the alleged violation of the MWPCL.  *See* ECF 39.  Roberts submitted an Answer to that claim on November 6, 2015.  ECF 42.

On October 9, 2015, while the Motion to Dismiss was pending, the parties filed a "Joint Motion to Modify the Scheduling Order" (ECF 35), which I granted by Order of the same day. ECF 36 (the "Amended Scheduling Order").  The Amended Scheduling Order extended the discovery deadline to January 29, 2016, and set a new deadline for dispositive motions of February 29, 2016.  ECF 36.

The parties filed a "Joint Status Report" on January 29, 2016.  ECF 43.  The Joint Status Report notified the Court, for the first time, *id.*: "Plaintiff intends to file a motion for leave to amend his complaint to add claims for fraud and/or fraudulent conveyance against Defendants Michael Roberts and Sparrows Point, LLC as well as to add three (3) new defendants for the same causes of action . . . ."  Defendants noted their intent to oppose that motion.  *Id.*  A briefing

schedule was discussed during a conference call on February 29, 2015.  *See* Docket.  The briefing schedule followed.  *See* ECF 45; ECF 46.

Plaintiff submitted his Motion to Amend on March 4, 2016 (ECF 47), which includes a memorandum of law (ECF 47-1), and more than two dozen exhibits.  ECF 47-2 through ECF 47-12.  In particular, plaintiff seeks to file a Second Amended Complaint to add a new defendant, Thomas Roberts, and a new claim – fraudulent conveyance, under Maryland law.  *See* Maryland Code (2013 Repl. Vol., 2016 Supp.), §§ 15-201 *et seq.*, of the Commercial Law Article; ECF 47-1 at 5-14; *see also* ECF 47-3 ¶¶ 51-62.

According to plaintiff, in December 2015, "[d]uring the course of the St. Louis depositions, Plaintiff became aware of the existence of an additional claim for fraudulent conveyance."  ECF 47-1 at 2; 3 n. 2.  He alleges that "two Unknown Trusts received substantial funds in violation of Maryland's Uniform Fraudulent Conveyance Act . . . .  These trusts are identified by Defendant Sparrows Point as the 'Roberts family trusts.[1]'"  ECF 47-1 at 2.  Further, plaintiff argues, *id*. at 13-14:

> While on actual notice of Plaintiff's claim to an $825,000.00 commission and Plaintiff's intention to file a lawsuit for the commission, Mike Roberts and his brother, Tom Roberts, caused Sparrows Point to transfer nearly all of the proceeds from the Property's sale from Sparrows Point's bank account to the Roberts family trusts. The transfer was not made in exchange for any consideration, left the LLC with insufficient funds to pay Plaintiff's $825,000.00 commission and, as Plaintiff alleges in his amended pleading, was done for the purpose of placing the funds out of Plaintiff's reach in any subsequent lawsuit.

Defendants oppose the Motion to Amend as untimely.  ECF 48 at 1-2.  They argue there is no good cause as to why plaintiff took three months from the time that he learned of the new claim for fraudulent conveyance on December 2, 2015 to file the Motion to Amend.  *Id*.  They also argue that they would be prejudiced by the addition of a new claim and a new defendant.  *Id*. at 10.  In this regard, they point to additional discovery burdens in a case where discovery has

closed, prejudicial delay of the proceedings, and the lack of prejudice to plaintiff, who can pursue a fraudulent conveyance claim if he prevails in this case. *Id.* at 13-15. Further, defendants argue futility, based on lack of personal jurisdiction. *Id.* at 15-21.

In addition, defendants claim plaintiff has waived his right to a jury trial. Therefore, they maintain that he is "not entitled to resuscitate that right through amending the complaint." ECF 48 at 21.

In their Motion for Surreply (ECF 50), defendants argue that, in his Reply, plaintiff introduced new arguments as to (1) a previous discovery request, (2) the potential for additional discovery that would result from granting the Motion to Amend, and (3) the request for a jury trial. ECF 50-1 at 1-5. Plaintiff disagrees. ECF 51.

## II.    The Motion for Surreply

Local Rule 105.2(a) provides that a party is not permitted to file a surreply without permission of the court. The filing of a surreply "is within the Court's discretion, *see* Local Rule 105.2(a), but they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g.*, *Chubb & Son v. C & C Complete Servs., LLC,* 919 F. Supp. 2d 666, 679 (D. Md. 2013). A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted). However, a surreply is not permitted where the nonmoving party, in its reply, merely responds to an issue raised by the moving party in its opposition. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605–06 (D. Md. 2003). This is because, in that posture, the moving party had the opportunity to fully

support its arguments in the opposition and the surreply would not be the first time that the party

could respond.  *Id*. at 606.

Defendants argue that plaintiff made three new arguments in his Reply.  *See* ECF 50-1.

First, defendants submit, *id*. at 1: "Plaintiff attaches to his Reply an irrelevant discovery request

seeking all of [Sparrow's Point's] financial information.  [Sparrows Point] previously objected to

this request due to its breathtakingly overbroad nature and complete lack of connection to the

sole issue in this case . . . ."  According to defendants, "the Reply brief is the first time Plaintiff

has ever suggested that the objection was improper."  *Id*. at 2.  Second, defendants contend that,

for the first time, plaintiff argued in the Reply that "should his Motion be granted, there will be

no meaningful additional delay because this Court can severely curtail the right of new (and

existing) defendants to conduct discovery on the newly asserted claim."  *Id*. at 3.  Third,

defendants assert that "Plaintiff, for the first time, argues that he has claimed a jury trial all

along."  *Id*. at 4.

In his Response (ECF 51), plaintiff disputes the claim that he has presented "'new'

matters that were not previously raised in the briefing," adding that defendants "mislead this

Court."  *Id.* at 1.  He argues, *id*:

> Defendants' Sur-Reply . . . improperly attempts to have the last word
> concerning a discovery request propounded by Plaintiff concerning SPLLC's
> finances. Defendants first raised this issue on page 12 of their Opposition to
> Plaintiff's Motion for Leave to Amend whereupon they disingenuously argued to
> this Court, "throughout the pendency of this matter Plaintiff never concerned
> himself with the disposition of the sales proceeds[.]"

To defendants' second point, plaintiff contends, *id*. at 2:

> Similarly, Defendants' Sur-Reply . . . improperly attempts to have the last
> word concerning limited discovery to be taken should the Court grant Plaintiff's
> Motion for Leave to Amend. Again, Defendants first raised this issue on pages 13
> – 15 of their Opposition to Plaintiff's Motion for Leave to Amend (ECF 48), and
> Plaintiff responded to the argument in his Reply at pages 5 – 7 (ECF 49).

With respect to defendants' third argument, plaintiff asserts, *id*. at 2-3:

> Finally, Defendants' Sur-Reply . . . attempts to have the last word concerning whether Plaintiff has a right to a jury trial in the above captioned case. Defendants first raised this issue on pages 21 – 23 of their Opposition to Plaintiff's Motion for Leave to Amend (ECF 48), and Plaintiff responded to the argument in his Reply at pages 11 – 12 (ECF 49).

The first argument in the proposed Surreply concerns a discovery matter.  In the Opposition, defendants argue that "throughout the pendency of this matter Plaintiff never concerned himself with the disposition of the sales proceeds."  ECF 48 at 12.  In the Reply, plaintiff responds, ECF 49 at 2: "Plaintiff sought [Sparrows Point's] financial records when he first served his Requests for Production of Documents in this case."  Noting that Sparrows Point objected to a document production request, plaintiff continues, *id*. at 4: "Defendants should not be rewarded now with a denial of Plaintiff's Motion for Leave on account of their previous refusal to turn over the very documents that were requested during the course of discovery that would have earlier revealed their fraudulent activity."  In the Surreply, defendants seek to address plaintiff's failure to pursue a challenge to Sparrows Point's objection to the requested discovery.  *See* ECF 50-1 at 1-3.  In my view, plaintiff's Reply was prompted by, and in response to, the Opposition.  In any event, the matter in dispute pertains an issue that is tangential here.

The second argument in the proposed Surreply addresses the need for further discovery if amendment is permitted.  In the Opposition, defendants argue, ECF 48 at 13: "Were this Court to permit the Second Amended Complaint, the parties will undoubtedly require additional written discovery, designation of expert witnesses, depositions of fact and expert witnesses, dispositive motions, third-party discovery practice, and requests to modify the scheduling order."

In his Reply (ECF 49), plaintiff responds.  ECF 49.  He states, *id*. at 6:

> Tom Roberts would have the right to propound written discovery on the Plaintiff because he would be a new party to the case. Defendants offer no insight,

however, regarding what written discovery he would need to defend against the fraudulent conveyance claim beyond what has already been collected from the Plaintiff.

The Reply did not raise a new issue.  It is an obvious response to the assertions in the Opposition.

Defendant's third argument concerns the plaintiff's demand for jury trial.  In the Opposition, defendants state, ECF 48 at 21:

> Although Plaintiff's current Motion does not make any reference to or demand for a jury, the proposed amended pleading refers to a jury in several places in its *ad damnum* clauses. Accordingly, out of an abundance of caution, Defendants will briefly address Plaintiff's waiver of any right to a jury.

In the Reply, plaintiff responds, asserting that he has a right to a trial by jury.  *See* ECF 49 at 11-12.  Plaintiff made this assertion in direct response to the argument raised in the Opposition.  To be sure, the Opposition merely identified the issue, while the Reply is quite substantive.  Nevertheless, because I do not resolve the jury trial issue in the context of the Motion to Amend, the Surreply is unnecessary.

In sum, I shall deny the Motion for Surreply.

### III.      The Motion to Amend

Plaintiff seeks to amend his First Amended Complaint in several ways.  First, plaintiff moves to add a new claim for fraudulent conveyance.  *See* ECF 47-1 at 2; ECF 47-3 at ¶¶ 51-62. Second, plaintiff seeks to add a new defendant, Thomas Roberts, solely as to the fraudulent conveyance claim.  ECF 47-1 at 5-6; ECF 47-3 ¶ 53.  And, the defense contends that plaintiff has added language regarding a jury trial.  *See, e.g.*, ECF 47-3 at 9 ¶ a.  I shall consider together the first two proposed amendments.

**A.  The Addition of a New Claim and a New Defendant**

This case was removed from State court in January 2015.  ECF 1.  The Scheduling Order required the amendment of pleadings by July 31, 2015.  ECF 21.  Pursuant to the Amended Scheduling Order (ECF 36), the discovery deadline was extended to January 29, 2016.  ECF 36. On that date, plaintiff notified the court of his intention to move to amend.  ECF 43.  The Motion to Amend followed a few weeks later, on March 4, 2016.  ECF 47.  Because the Motion to Amend was filed well after the deadline of July 31, 2015, Rule 16(b) is pertinent.

**1.  Fed. R. Civ. P. 16(b)**

"[A]fter the deadlines provided by a scheduling order have passed, the good cause standard" applicable to modifications of scheduling orders under Fed. R. Civ. P. 16 "must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *see also Cook v. Howard*, 484 Fed. App'x 805, 814–15 (4th Cir. 2012) (stating that Rule 15(a)(2) "applies . . . prior to the entry of a scheduling order, at which point, under Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.").  In *Nourison*, 535 F.3d at 298, the Fourth Circuit explained:

> There is tension within the Federal Rules of Civil Procedure between Rule 15(a) and Rule 16(b) . . . .  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile. *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001). On the other hand, Rule 16(b) provides that "a schedule shall not be modified except upon a showing of good cause and by leave of the district judge."
>
> * * *
>
> Given their heavy case loads, district courts require the effective case management tools provided by Rule 16.

"Good cause requires the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence, and whatever other factors are also considered, the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." *Cook*, 484 Fed. App'x at 815 (quotations omitted) (alterations in original).  In making that determination, courts may consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party."  *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014) (citing *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010)).  But, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 107 (D. Md. 2013) (internal quotations and citation omitted).

If the moving "'party was not diligent, the inquiry should end.'"  *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) (quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995) (emphasis omitted)); *accord, e.g.*, *CBX Technologies, Inc. v. GCC Technologies, LLC*, JKB–10–2112, 2012 WL 3038639 at *4 (D. Md. July 24, 2012) (denying motion to amend complaint because plaintiff's "failure to anticipate" its needs was "of its own doing and not the fault of any other entity"), *aff'd*, 533 Fed. App'x 182 (4th Cir. 2013).

*Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618 (D. Md. 2003), is informative.  There, one week beyond the deadline for joinder as set forth in the scheduling order, the plaintiff filed a conditional motion for leave to file an amended complaint, seeking to add two defendants in the event that the court granted the defendant's pending summary judgment motion.  *Id.* at 630-31.  The only explanation offered by the plaintiff for the out-of-time filing was that the plaintiff's counsel had "'overlooked'" the schedule.  *Id.* at 632.  In light

of the court's denial of the defendant's summary judgment motion, Judge Chasanow denied as moot the request for leave to amend.  But, she noted that she would not "have allowed" plaintiff to amend the complaint to add new parties under Rule 16 "at this late date . . ."  *Id*. at 631.

Judge Chasanow explained: "Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'"  *Id.* at 632 (internal quotations omitted).  She added, *id.*: "The tardiness is particularly egregious given that [the plaintiff] was put on notice as early as January 2002 that [the defendant] would assert that [another entity] was the proper defendant in the case."  *See also Sharkey IRO/IRA v. Franklin Resources*, 263 F.R.D. 298, 301 (D. Md. 2009) (concluding that "undue delay [in the filing of a motion to amend] may exist when there is no reasonable justification for a delay between the moving party becoming aware of the need to alter the complaint and the actual filing of the motion to amend").

In his Motion to Amend, plaintiff explains why it took until December 2015 to learn of the new claim and the new defendant.  ECF 47-1 at 3.  He states that plaintiff "did not discover the existence of the additional claim until . . . taking the deposition of Mike Roberts."  *Id*.  Mr. Roberts was deposed on December 2, 2015.  *See* ECF 47-7.  Plaintiff accounts for the time through December 2, 2015.  *See* ECF 49 at 2 ("Chastising Plaintiff for not learning of the grounds for the fraudulent conveyance claim until the day Mike Roberts sat for his deposition is unwarranted in this instance.").  But, he does not explain his nearly two-month delay between December 2, 2015, and January 29, 2016, when he disclosed his intention to seek leave to amend.

In their Opposition (ECF 48), defendants point out, *inter alia*, that plaintiff does not contend that he learned any additional information between the Roberts deposition on December

2, 2015, and the close of discovery on January 29, 2016.  Defendants add, *id*. at 11 (emphasis in original):

> Plaintiff's sole effort to justify his delay and lack of diligence is buried in a footnote . . . .  This footnote omits that Mike Roberts' deposition was conducted not just any date in December, but on December **2**, 2015, nearly two (2) months prior to the discovery deadline of January 29, 2015.

The belated Motion to Amend does not survive defendants' Rule 16 challenge.  As noted, plaintiff gave notice of his intention to amend about five months after the deadline set in the Scheduling Order, and almost two months after December 2, 2015, when he was put on notice of the claim for fraudulent conveyance.  Plaintiff does not provide any excuse for the delay between December 2, 2015, and January 29, 2016.  *See* ECF 47; ECF 49.  As of December 2, 2015, almost two months remained before the discovery deadline of January 29, 2016.  Yet, plaintiff, did not seek to amend at that time.

In my view, there was no justification for plaintiff's delay in seeking to amend the suit after he learned of the new claim and a new defendant on December 2, 2015.  Instead, plaintiff waited nearly two months, until the filing of the joint status report on January 29, 2016 (ECF 43), to alert opposing counsel and the Court of his intent to file the Motion to Amend.[7]  This delay is not consistent with diligence.  In my view, plaintiff has failed to show good cause under Rule 16.

## 2.  Fed. R. Civ. P. 15

Even if Macsherry could demonstrate good cause pursuant to Fed. R. Civ. P. 16, his proposed Second Amended Complaint does not satisfy the requirements of Fed. R. Civ. P. 15.

Fed. R. Civ. P. 15(a)(2) states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so

---

[7] As noted, following a telephone conference held by the Court on February 29, 2016, plaintiff filed the Motion to Amend on March 4, 2016.  ECF 47.

requires." *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).   Under Rule 15(a), the district court has "broad discretion concerning motions to amend pleadings . . . ."   *Booth v. Maryland*, 337 Fed. App'x 301, 312 (4th Cir. 2009) (per curiam); *see also Foman*, 371 U.S. at 182;  *Laber v. Harvey,* 438 F.3d 404, 426–29 (4th Cir. 2006) (en banc).   A district court may deny a motion to amend for reasons "'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'"   *Booth*, 337 Fed. App'x at 312 (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

"Delay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."); *Brightwell v. Hershberger*, DKC-11-3278, 2015 WL 5315757, at *3 (D. Md. Sept. 10, 2015) ("Delay, however, 'cannot block an amendment which does not prejudice the opposing party.'") (quoting *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990)).   "Rather, the delay must be accompanied by prejudice, bad faith, or futility."  *Edwards*, 178 F.3d at 242 (citation omitted); *see Simmons*, 634 F.3d at 769; *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Nourison Rug Corp.*, 535 F.3d at 298; *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).  In my view, the proposed Second Amended Complaint is prejudicial to the defendants.

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a

pleading."  6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 at 701 (3d

ed.) ("Wright & Miller") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321

(1971); *United States v. Hougham*, 364 U.S. 310 (1960)).  The burden of showing prejudice falls

on "the party opposing amendment."  *Atl. Bulk Carrier Corp. v. Milan Exp. Co.*, 3:10-cv-103,

2010 WL 2929612, at *4  (E.D. Va. July 23, 2010). "[I]f the court is persuaded that no prejudice

will accrue, the amendment should be allowed."  Wright & Miller, § 1487 at 701.

In *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir.

2011), the Court said: "'Whether an amendment is prejudicial will often be determined by the

nature of the amendment and its timing . . . .  [T]he further the case progressed before judgment

was entered, the more likely it is that the amendment will prejudice the defendant . . . .'"

(quoting *Laber*, 438 F.3d at 427) (alteration in *Laber*).  To be sure, "prejudice can result where a

proposed amendment raises a new legal theory that would require the gathering and analysis of

facts not already considered by the opposing party, but that basis for a finding of prejudice

essentially applies where the amendment is offered shortly before or during trial."  *Johnson v.

Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  In contrast, generally "[a]n amendment

is not prejudicial . . . if it merely adds an additional theory of recovery *to the facts already pled*

and is offered before any discovery has occurred."  *Laber*, 438 F.3d at 427 (emphasis added).

Therefore, the court must examine the facts of each case "to determine if the threat of prejudice

is sufficient to justify denying leave to amend."  Wright & Miller, § 1487 at 701.

*Simmons v. Justice*, 196 F.R.D. 296 (W.D.N.C. 2000), is instructive.  There, the court

denied the defendant's request to amend his answer to assert a defense because his delay in

amending his answer was prejudicial to the plaintiff.  *Id*. at 197.  The court said, *id*. (internal

quotations omitted):

> [U]ndue delay is apparent: the moving defendants waited nearly five months, until discovery closed and the last day for filing dispositive motions, to seek leave to add substantive defenses to their complaint. They make no allegation that they latently discovered such defenses through the process of discovery and fail to explain the five-month delay in moving to amend. To require plaintiff to prepare to oppose such defenses at this point in time would be unduly prejudicial.

Courts have been reluctant to allow amendment at late stages of litigation, where the moving party seeks to add claims that are not intimately related to the existing claims. *See, e.g.*, *De Sousa v. Dept. of State*, 840 F. Supp. 2d 92, 114 (D.D.C. 2012) ("'Where . . . the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied.'"); *Sharkey*, 263 F.R.D. at 301 ("A motion to amend may prejudice the non-moving party when the motion would shift the theory of the case, thereby rendering the non-moving party's prior discovery a misdirected use of resources and compelling the non-moving party to engage in costly additional discovery."); *CareToLive v. von Eschenbach*, 525 F. Supp. 2d 952, 971 (S.D. Ohio 2007) (denying a motion to amend because the proposed new claim was not related to the original suit and would "radically shift the scope and nature of [the] litigation"); *compare Uzoukwu v. Metro. Wash. Council of Govt's*, 983 F. Supp. 2d 67, 85 (D.D.C. 2013) (finding that a proposed new claim was not "wholly unrelated to the allegations asserted in the original complaint"); *Cottman Transmission Sys, LLC v. Kershner*, 492 F. Supp. 2d 461, 473 (E.D. Pa. 2007) (noting that proposed amendments "would not radically alter the scope and nature of [the] case, and the proposed amendments bear more than a tangential relationship to the original action").

Plaintiff contends that the existing defendants will not suffer prejudice.  He states, ECF 47-1 at 14 (emphasis in original):

First, no trial date has been set. Second, summary judgment motions have not yet been filed nor has a briefing schedule on summary judgment been set,[8] allowing Defendants the same opportunity to attempt to dispose of Plaintiff's new claim had it been filed prior to the deadline set forth in the original scheduling order or any later date. See n. 2 above. Third, Plaintiff does not seek to take any additional depositions is this matter. Tom Roberts, the only proposed new party, has already been deposed.

On the other hand, plaintiff argues that, if the Motion to Amend is denied, "the Plaintiff would be forced to file a separate case against Sparrows Point, Mike Roberts and Thomas Roberts for his fraudulent conveyance claim and then move to consolidate with this case or, alternatively, litigate that second case independently from this case." *Id*. at 15.

As defendants put it, plaintiff will be "muddying the proverbial waters through his proposed Amendment." ECF 48 at 14. They insist that they will suffer prejudice if the Motion to Amend is granted because of the "additional cost and delay . . . ." *Id*. Further, they maintain that "the parties will undoubtedly require additional written discovery, designation of expert witnesses, depositions of fact and expert witnesses, dispositive motions, third-party discovery practice,[] and requests to modify the scheduling order." ECF 48 at 13. Moreover, they note that "discovery is closed, and Defendants have prepared—again at a considerable investment of time and expense—a dispositive motion . . . ." as to plaintiff's claim for a commission. *Id*. at 14.

Plaintiff counters that any additional discovery will be "limited" and that he would be willing to withdraw the request to reopen discovery. ECF 49 at 4. This does not change the calculus. Even if the plaintiff did not pursue additional discovery, both the new defendant and the existing defendants would be entitled to conduct discovery related to the new claim of

---

[8] Plaintiff omits to mention that the Amended Scheduling Order of October 9, 2015 (ECF 36) set a dispositive motions deadline of February 29, 2016. However, it became necessary for the Court to stay that deadline for the purpose of first resolving the Motion to Amend. *See* ECF 46. It is for that reason that no summary judgment deadline has been set.

That is why summary judgment motions have not yet been filed.

fraudulent conveyance and the role, if any, of all the defendants.   The testimony of Thomas Roberts is clearly not the only discovery necessary to pursue or to defend against a fraudulent conveyance claim.

Moreover, the proposed claim is based on entirely new facts.  As defendants aptly put it, ECF 48 at 2: "Allowing the new claim and additional defendants would greatly expand the scope of this litigation and create unnecessary additional costs for all defendants, new and old."

To the extent relevant, there is little basis to find that plaintiff will suffer any prejudice by denial of the Motion to Amend.  Plaintiff acknowledges in the Motion that, even if the Motion were denied, he may "file a separate case against Sparrows Point, Mike Roberts and Tom Roberts for his fraudulent conveyance claim and then move to consolidate with this case or, alternatively, litigate that second case independently from this case."  ECF 47-1 at 15.  In addition, plaintiff recognizes that, if judgment is entered in his favor in this case, he may "seek the information he needs pursuant to Fed. R. Civ. P. 69, which provides for discovery in aid of execution of a judgment."  ECF 49 at 4-5.

Notably, to recover on a fraudulent conveyance claim, plaintiff must first prevail on the underlying merits, and then be unable to recover on that judgment.  *See* ECF 48 at 14.  In other words, the "proposed new claim is wholly dependent on first prevailing against [defendants], meaning it is not ripe, and may well be rendered moot by disposition of the underlying claims." ECF 48 at 15.  Denial of the Motion to Amend would minimize the risk of incurring unnecessary expenses, minimize delay, and avoid expansion of the litigation to include an issue that is premature, without jeopardizing plaintiff's right to pursue the claim at a later time, if warranted.

In *Sharkey*, 263 F.R.D. at 301, Judge Motz explained:  "A motion to amend may prejudice the non-moving party when the motion would shift the theory of the case, thereby

rendering the non-moving party's prior discovery a misdirected use of resources and compelling the non-moving party to engage in costly additional discovery." That rationale resonates here. Defendants "would . . . be required to engage in costly additional discovery to defend against this theory" (*id.* at 302), even though plaintiff has not yet prevailed on the merits of his contract or quasi-contract claims.

This case is approaching its third year of litigation. At this late stage of the case, I am persuaded that the additional expense and inherent delay that would result from reopening discovery, adding a new claim, and adding a new defendant, would prejudice defendants.[9]

## B.  Jury Trial Demand

The proposed Second Amended Complaint seems to refer to a jury trial. *See, e.g.,* ECF 47-3 at 9 ¶ (a). The *ad damnum* clauses of the proposed Second Amended Complaint state that Macsherry seeks compensatory damages "in an amount determined by *jury*[.]" *Id.* (emphasis added). Defendants argue that a jury trial has never been prayed and therefore an amendment to permit a jury trial is not appropriate. In their view, plaintiff has waived his right to a jury trial and any demand for a jury trial would now be untimely. ECF 50-1 at 1-3.

Plaintiff does not indicate that he seeks to amend in order to pray a jury trial. However, the redlined version of the Second Amended Complaint reflects the addition of the word "jury" in several places. *See, e.g.*, ECF 47-3 at 49. Moreover, in his Reply plaintiff claims that he previously demanded a jury trial. ECF 49 at 11-12.

Rule 38(b) and Rule 81(c)(3) of the Federal Rules of Civil Procedures govern when a party may demand a jury trial. Rule 81(c)(3), which pertains to removal actions, provides: "If all necessary pleadings have been served at the time of removal, a party entitled to a jury trial under

---

[9] Because I find that the issue of prejudice is dispositive under Rule 15, I need not reach defendants' argument regarding futility. *See* ECF 48 at 15-21.

Rule 38 must be given one if the party serves a demand within 14 days after . . . it is served with a notice of removal filed by another party." Rule 38(b) provides: On any issue triable of right by a jury, a party may demand a jury trial by . . . serving the other parties with a written demand– which may be included in a pleading–no later than 14 days after the last pleading directed to the issue is served."

The question of whether plaintiff timely demanded a jury trial is not properly resolved in the context of the Motion to Amend. In any event, because I will deny the Motion to Amend, plaintiff's request for a jury trial, if any, will turn on his earlier submissions.[10]

### IV.   Conclusion

For the reasons stated, I shall DENY the Motion for Surreply. And, I shall DENY the Motion to Amend. An Order follows.


October 28, 2016                                                        /s/
Date                                                      Ellen Lipton Hollander
                                                          United States District Judge

---

[10] If Macsherry previously demanded a jury trial, as he suggests, there is no need to amend the suit to add such a request. What the court said in *Sw. Stainless, L.P. v. Sappington*, No. 07-CV-0334-CVE-PJC, 2007 WL 3561477, at *2 (N.D. Okla. Nov. 14, 2007), is apt:

> The Court further notes the illogical nature of plaintiff's argument. Plaintiff seeks to add a jury demand to the amended complaint; yet plaintiff argues in its response that it made a jury demand in the original complaint. Only a very confused plaintiff would seek to add a jury demand to a complaint which already made such a request.