

**MILES & STOCKBRIDGE** P.C.

**Joshua J. Gayfield**
Direct Dial: 410-385-3734
Direct Fax: 410-773-9096
jgayfield@milesstockbridge.com

February 28, 2018

**VIA CM/ECF**

The Honorable Ellen L. Hollander
United States District Court for the
District of Maryland
101 W. Lombard Street
Baltimore, MD 21201

      Re: *John H. Macsherry, Jr. v. Sparrows Point LLC, et al.*
           Case No. 1:15-cv-00022 ELH

Dear Judge Hollander:

On behalf of Defendants, I write in response to Your Honor's Paperless Order of February 23, 2018, directing counsel to submit copies of the disputed exhibits with citations to authority in support of their respective positions of admissibility or inadmissibility. As set forth below, Plaintiff's Exhibits 10, 11, 15, 16, 22, 29, 30, 38, 39, 40, 44, 45, 64, and 65 are inadmissible. Copies of the same are attached hereto.

**The Term Sheets Are Inadmissible**

Plaintiff's Exhibits 10, 22, and 30 (the "Term Sheets") are inadmissible because they are incomplete, not the best evidence, hearsay, cannot be authenticated, and are unfairly prejudicial and misleading. Exhibits 15, 16, 29, 44, and 45 are similarly inadmissible in that they are emails from Plaintiff forwarding one of Exhibits 10, 22, or 30 (and in the case of 45, Mike Roberts forwarding Exhibit 44 to his brother).

Plaintiff intends to offer two redlined term sheets (Exhibits 10 and 30), and an earlier, clean, pre-redline version (Exhibit 22), all of which he alleges he received via email from Defendants while the parties were negotiating the terms of Plaintiff's employment (ECF No. 59-6, pp. 75-81). These documents are inadmissible pursuant to FRE 106 (i.e., the rule of completeness), which requires "the introduction … of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." The Advisory Committee Notes on the rule clarify that the rule is based on two considerations, the first being "the misleading impression created by taking matters out of context." Critically, though Plaintiff has testified that Mr. Schoelch sent him each version of the term sheet via email, the alleged emails have never been

Case 1:15-cv-00022-ELH Document 115 Filed 02/28/18 Page 2 of 6

The Honorable Ellen L. Hollander
February 28, 2018
Page 2



produced or found.[1] Because, according to Plaintiff's testimony, the term sheets were attached to emails sent by Mr. Schoelch during contract negotiations but before Plaintiff was hired, and because those emails would almost certainly aid the finder of fact in determining whether the Term Sheets were intended to be a contract, "fairness" requires introduction of the contextual cover emails so that they may be "considered at the same time." As Plaintiff bears the burden of proof, and as Plaintiff has offered no explanation for the absence of these critical emails, it would be improper for Plaintiff to be permitted to display the term sheets to the jury in the absence of the parties' contemporaneous written communications regarding the same.[2]

Plaintiff is expected to argue that he can testify to the content of the missing emails in order to satisfy Rule 106 and other evidentiary objections. However, any such testimony would violate the best evidence rule and is therefore inadmissible. "An original writing, recording, or photograph is required to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. "When the contents of a writing are at issue, oral testimony as to the terms of the writing is subject to a greater risk of error than oral testimony as to events or other situations." *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986). While FRE 1004 permits, in an exception to the best evidence rule, secondary evidence of a writing's content if the introducing party can prove that the writing was "lost or destroyed, and not by the proponent acting in bad faith," the proponent must first demonstrate a diligent search for the missing documents. Importantly, "where the missing original writings in dispute are the very foundation of the claim ... more strictness in proof is required than where the writings are only involved collaterally." *Sylvania Elec. Prod., Inc. v. Flanagan*, 352 F.2d 1005, 1008 (1st Cir. 1965). Thus, in order for the Court to permit Plaintiff to proceed with testimony regarding the missing emails, it must first find that Plaintiff, "in good faith, exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him." *Simpson & Co. v. Dall*, 70 U.S. 460, 475 (1865) (quoting 1 Greenleaf on Evidence, § 558). Here, Plaintiff cannot meet this burden. The alleged emails attaching the term sheets should have been in his possession, and yet he has offered no explanation whatsoever for their absence. During discovery, Defendants searched for and produced thousands of responsive documents, but also did not locate any such emails. Notwithstanding the absence of critical evidence supporting his claim, Plaintiff did not, for

---

[1] The parties produced thousands of other contemporaneous communications and documents.

[2] Notably, when Defendants asked Plaintiff to deny or admit that he did not possess any correspondence enclosing attaching the term sheets, he denied the request, implying that he in fact ***does*** have copies of such correspondence. Plaintiff's Responses to Sparrows Point, LLC's Request for Admission, No. 5, attached as **Exhibit A** hereto. But he has failed to produce any such communications or identify them as exhibits, despite being served during discovery with document requests seeking such correspondence. *See* CDC's First Request for Production of Documents, No. 8, seeking "All documents relating to any version or draft of the Term Sheet, ***including but not limited to, emails or other correspondence forwarding or attaching any version or draft of the Term Sheet***." (emphasis added). A copy of CDC's Document Request is attached as **Exhibit B,** hereto. Defendants are prejudiced by Plaintiff's failure to provide the emails.

The Honorable Ellen L. Hollander
February 28, 2018
Page 3



example, retain a forensic computer expert to see if the emails could be retrieved from his computer or the Gmail account he used to exchange emails with Defendants prior to his employment, nor is there any indication that Plaintiff subpoenaed Google or any third party internet provider (*e.g.* Comcast) in an effort to locate the missing emails.

The fact that the emails are missing and Plaintiff made no diligent effort to locate them is even more problematic than the ordinary case; here, Plaintiff intends to use the alleged attachments (i.e. the Term Sheets) to the missing emails to prove the content of ***another*** missing writing, that is, the alleged contract he signed in St. Louis. As such, Plaintiff cannot take refuge in FRE 1004. In *Cartier v. Jackson*, 59 F.3d 1046 (10th Cir. 1995), the trial court precluded testimony about the content of missing demo tapes where the proponent had failed to subpoena or compel the record companies that might have possessed a copy of the same. Similarly, in *Medina v. Multaler, Inc.*, 2007 WL 5124009, Case No. CV-06-00107 (C.D. Cal., Feb. 7, 2007), the trial court held that a proponent's search for a missing email was inadequate where, among other things, the email was alleged to have existed on the defendant's server and the plaintiff did not serve adequate document requests or move to compel production of the same. *4 ("[Plaintiff] could have used any and all of the mechanisms provided by the Federal Rules of Civil Procedure to seek and/or compel production of the email by the company"); *see also L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 936 (9th Cir. 2002), *opinion amended and superseded*, 313 F.3d 1093 (holding testimony regarding an unavailable writing inadmissible where the proponent "offer[ed] no basis for concluding that it could not have obtained the original [writing] by ordinary third-party discovery."). Given Plaintiff's utter lack of diligence and failure to use all tools available at his disposal to locate the various allegedly missing documents, Plaintiff has not met his burden to prove that the documents he intends to testify about are indeed "lost or destroyed." Accordingly, Rule 1002 prohibits their introduction at trial, and thus Plaintiff will be unable to lay a proper foundation for the introduction of the Term Sheets.

For similar reasons, Plaintiff cannot overcome the rule against hearsay. While FRE 801(d)(2) permits introduction of statements made by an opposing party, Plaintiff's testimony, standing alone, is insufficient to establish that the term sheet was in fact a statement generated wholly by Defendant's employee within the scope of that relationship. Mr. Schoelch testified that he did not recall the final terms of Plaintiff's employment, and further testified that he did not know who had requested the edits to Exhibit 10 (*i.e.*, while Schoelch may have input the edits, he suggested they could have been at Plaintiff's request). (ECF No. 59-9, pp. 49-51). In the absence of the (alleged) cover emails, which undoubtedly would have provided necessary context to the communications between the parties, it is impossible to accurately evaluate whether in fact the Term Sheet, standing alone, can be construed as an opposing party's "statement" for purposes of overcoming the rule against hearsay.

Finally, the Term Sheets should also be excluded due to the danger of unfair prejudice or misleading the jury. *See* Fed. R. Evid. 403. Plaintiff is expected to testify that the provisions of the Term Sheets were reproduced in a written employment contract offered to him in St. Louis. However, that alleged written contract has never been located. The presentation of the Term Sheets alone, without either the final alleged contract or the alleged contemporaneous communications enclosing the Term Sheets is unfairly prejudicial and likely to confuse the jury.

The Honorable Ellen L. Hollander
February 28, 2018
Page 4



Should the Term Sheets enter into evidence, Defendants are placed in the unfair position of having to explain the absence of various documents that Plaintiff should have been reasonably expected to retain and produce, or locate in discovery, particularly given that they form the heart of his claims. Accordingly, this Court should exclude the foregoing Exhibits from evidence.

### Exhibits 11, 38, 39, 40, 64, and 65 Contain Inadmissible Hearsay

As discussed at the Pretrial Conference, Plaintiff intends to submit these Exhibits to prove that Plaintiff was in fact employed by Defendant CDC. Each of these Exhibits, however, contains inadmissible hearsay testimony. "Hearsay means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

Exhibit 11 attaches an online news article apparently printed by Plaintiff or his counsel. The author of the article is not identified and is not expect to appear at trial to verify its contents. Accordingly, the article constitutes inadmissible hearsay.

Exhibits 38 and 39 consist of emails and attachments prepared by person identified as "Lisa Harlow" and sent to Plaintiff's Gmail account, which Plaintiff then forwards to Defendants. It appears Ms. Harlow may have been acting at Plaintiff's direction. The attachment to Exhibit 38 is a draft statement apparently prepared by Ms. Harlow under Plaintiff's name. Similarly, Exhibit 39 is an email from Ms. Harlow pasting into the body of the email the text of an apparent press release drafted by Ms. Harlow in Plaintiff's name. Both Exhibits represent Plaintiff to be a Vice President of Commercial Development Corporation, and ostensibly are to be offered to prove the truth of that allegation. Ms. Harlow is not a trial witness. Accordingly, both emails (and any attachments) constitute inadmissible hearsay.

Exhibit 40 attaches an unsigned letter to Plaintiff from a third party, Matthew Ryan at Ryan Commercial Real Estate Services, in which Plaintiff is identified as Vice President Development and Leasing, Commercial Development Company. Mr. Ryan is not expected to appear at trial in order to authenticate the document, and, accordingly, it constitutes inadmissible hearsay.

Finally, Exhibits 64 and 65 purport to be letters from officials at the Maryland State Highway Administration to John Macsherry, who is identified in the address as the Vice President – Development and Leasing for Commercial Development Company, Inc. Neither of the authors of these letters are expected to testify at trial. As before, it is expected that Plaintiff intends to offer these out of court statements to prove that he was in fact a CDC employee. The Exhibits should be excluded.

### Defendants Have Not Waived Their Right To Challenge The Admissibility Of The Foregoing Exhibits

During the Pretrial Conference, Plaintiff's counsel complained that certain of Defendants' objections had been waived due to responses to requests for admission in which certain

The Honorable Ellen L. Hollander
February 28, 2018
Page 5



documents were admitted to be "genuine." This contention is unavailing for the reasons explained below.

As Plaintiff is aware, at all relevant times during this litigation, Defendants have objected to the authenticity of the Term Sheets. On July 24, 2015, CDC and SPLLC filed their Answer to the Amended Complaint (ECF No. 26), asserting as their first negative defense: "Defendants expressly deny the authenticity of the alleged Contract and deny that Defendants ever entered into such an agreement." (ECF No. 28). Similarly, on November 6, 2015, Mr. Roberts' Answer listed as his first negative defense as follows: "Mr. Roberts expressly denies the authenticity of the alleged employment contract." (ECF No. 42). These Answers remain the operative pleadings for each of the Defendants; Defendants have never waived or withdrawn these defenses. Thus, for nearly three (3) years Plaintiff has been on notice that the authenticity of the Term Sheets is in dispute.[3]

On March 25, 2016, SPLLC and CDC responded to a request from Plaintiff that Defendants admit that the term sheets found at Exhibits 10 and 22 were "true, accurate, and complete" "business records" by denying the request but admitting that the described documents were "genuine."[4] Mr. Roberts responded by denying all of the requests. Copies of the Responses are attached hereto as **Exhibits C, D,** and **E**, respectively. In the Responses, CDC and SPLLC expressly stated that their admissions were not a "waiver of [their] right to object to the document's authenticity or admissibility at trial, nor [was] any such admission a concession that any exception to the rule of hearsay applies…." General Objections No. 6. Additionally, CDC and SPLLC objected on the basis that any reference to the "Agreement" in the responses was merely a reference to the document attached to the Complaint, and not an admission "that any such document constitutes an agreement by and between Plaintiff and Defendant nor asserting that any such agreement, of any kind, exists." General Objection No. 7. Accordingly, it is clear that all Defendants expressly preserved their right to object to the authenticity of the identified documents.

Finally, in the alternative, even if this Court was to find that CDC and SPLLC's admission to the genuineness of an exhibit was tantamount to conceding the authenticity or admissibility of the exhibit, CDC and SPLLC respectfully request leave to amend their responses. *See Perez v. Miami-Dade County*, 297 F.3d 1255, 1264 (2002) (holding that in considering whether to grant a

---

[3] Defendants' position has remained consistent throughout this litigation. By way of example and not limitation, Defendants' Motion for Summary Judgment observed that Plaintiff had failed to produce a copy of the email that he claimed was used to transmit the Term Sheets. (ECF 59-1 at 7, n. 3). And in the April 1, 2016 Opposition to Plaintiff's Motion for Leave to Amend, Defendants stated that "Plaintiff's claim turns on whether he is entitled to enforce an unsigned, redlined, indefinite, and incomplete document, ***of unknown origin***, to claim a commission of $825,000." (ECF No. 48, p. 14) (emphasis added).

[4] Indeed, the proposed exhibits in question are true copies of documents emailed by Plaintiff to Defendants. But such does not establish their authenticity in the first instance, nor was its CDC's or SPLLC's intent to admit otherwise.

The Honorable Ellen L. Hollander
February 28, 2018
Page 6



motion to amend an admission, the court should consider (1) whether the amendment will subserve the presentation of the merits, and (2), whether the amendment will prejudice the party who obtained the admission). While the trial has discretion in considering such a request, it is not "unfettered." *Id.* at 1265. Instead, [t]he court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than … on the moving party's excuses for an erroneous admission." *Id.* (quoting *In re Durability Inc.*, 212 F.3d 551, 556 (10th Cir. 2000) (additional citations omitted). The additional cases cited in *Perez* make clear that the "ascertainment of the truth and development of the merits" is the key analysis on the first prong, and that the second prong is generally satisfied where the request to amend is made prior to trial and/or the opposing party was on notice that the erroneously admitted fact or document is otherwise contested. *See id.* at 1266-68. In this instance, both factors are easily met. With respect to the first factor, the authenticity and purpose of the term sheets is a central issue in this case, and has been since litigation was filed. With respect to the second factor, there can be no prejudice because Plaintiff been on notice since 2015 that Defendants were contesting the authenticity of the documents in question (ECF Nos. 28 and 42). Moreover, even in the unlikely event that Plaintiff subjectively believed that CDC and SPLLC had abandoned their defenses through their responses to the Requests for Admission, the fact that Mr. Roberts denied the request for admission meant that Plaintiff remained on notice that he still needed to overcome potential evidentiary objections at trial. Thus, Plaintiff would suffer no prejudice should CDC or SPLLC need to amend their responses.

Very truly yours,

Joshua J. Gayfield

cc:   All counsel of record (via email only)