# Thomas&Libowitz, P.A.

STEVEN ANARGYROS THOMAS+*
ROBERT A. SNYDER, JR.
JOHN R. WISE
C. WAYNE DAVIS
FRANCIS R. LAWS
CHARLES B. JONES
SCOTT H. MARDER^

A Professional Association founded in 1975

100 Light Street, Suite 1100 ▪ Baltimore, MD 21202
Phone: 410-752-2468 ▪ Fax: 410-752-0979
_____

www.tandllaw.com

**ANDREW K. O'CONNELL**
aoconnell@tandllaw.com

*Serving the Community for over 40 Years*

ASSOCIATES
MUNACHI O. NSOFOR=
SIMA G. FRIED=
CLINTON R. BLACK, V~
PAUL A. SNYDER+
HENRY A. ANDREWS
JASON A. DENKEVITZ
STEPHEN E. DEMOS

COUNSEL
CLINTON R. BLACK, IV
DAVID M. SHEEHAN~○
DERRICK WANG

MEMBERS
MARGARET L. ARGENT+
ANDREW K. O'CONNELL
ANASTASIA THOMAS NARDANGELI

Also Member of DC Bar +
Also Member of VA Bar *
Also Member of NY Bar =
Also Member of CT Bar ~
Also Member of MA Bar ○
Also Member of FL Bar ^

April 25, 2018

*Via Electronic Case Filing Only*

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
1125 Chapline Street
P.O. Box 791
Wheeling, WV 26003

> **Re:   John H. Macsherry, Jr. v Sparrows Point LLC, et al.**
> **Case No.: 1:15-cv-00022 ELH**

Dear Judge Stamp:

On behalf of Plaintiff John Macsherry ("Plaintiff" or "Macsherry"), I write in response to Your Honor's Order, dated April 16, 2018 (ECF 124), to (A) provide Plaintiff's objections to deposition designations made by the Defendants and (B) respond to Defendants' objections to certain exhibits identified for trial in Mr. Gayfield's February 28, 2018 letter (ECF 115) ("hereinafter "Gayfield Ltr.").

Plaintiff's objections to Defendants' deposition designations are a day late. Plaintiff's counsel, Andrew O'Connell, requested that the Court excuse the oversight for the following reason. When Plaintiff's counsel requested during the April 16 scheduling conference that the due date for Plaintiff's response to Defendants' objections to exhibits (B) be moved from April 24 to April 25, which the Court accommodated, he mistakenly thought that he had also requested that the due date for objections to the deposition designations (A) was included in his request.[1] It wasn't. Reviewing the Court's Order, Counsel realized his oversight. While Plaintiff explained the error to Defendants, they object to the day late filing. As there appears to be no prejudice, the Plaintiff requests that the Court excuse the error.

Plaintiff files contemporaneously herewith his (A) objections to Defendants' deposition designations.

---

[1] The request was made because of O'Connell's travel schedule in the days leading up to April 24.

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **2** of **11**

      (B) Defendants' objections to Exhibits 10, 11, 15, 16, 22, 30, 38, 39, 40, 44, 45, 64, and 65 are without merit.

### **Exhibits 10, 22 and 30 (the "Term Sheets") Are Admissible**

      Defendants Commercial Development Company, Inc. ("CDC"), Sparrows Point, LLC ("SPLLC") and Mike Roberts ("Roberts") (collectively, "Defendants") object to the admission into evidence of Plaintiffs' Exhibits 10, 22 and 30 (the "Term Sheets"), claiming they are "incomplete, not the best evidence, hearsay, cannot be authenticated, and are unfairly prejudicial and misleading."

      By way of background, Plaintiff adopts and incorporates herein the "Background" portion, Sec. II., of his memorandum titled, Plaintiff's Opposition To Defendants' Motion For Summary Judgment and Memorandum In Support Of Cross-Motion For Partial Summary Judgment, (ECF 64-1, pp. 2 – 12).

      Defendants contend that the Rule of Completeness, FRE 106, precludes the admission of the Term Sheets because emails that these documents were attached to when they were sent to Macsherry were not produced during discovery – by any party. The Term Sheets are three versions of a document reflecting the terms of Plaintiffs employment. They vary in appearance in that "redline revisions" were made by Defendant Commercial Development Company, Inc.'s ("CDC") then Vice President, Robert Schoelch ("Schoelch"), who negotiated the terms of Plaintiff's employment. See Gayfield Ltr., Ex. 6, 9 and 10 (ECF 115- 6, 9 and 10).  Schoelch testified as follows regarding the exhibits:

      Exhibit 22 (the earliest version)

      Q (BY MR. O'CONNELL) Mr. Schoelch, I'm
      showing you what's been marked as Plaintiff's
      Deposition Exhibit Number 22. Could you take a
      look at that, sir?
      **A Okay.**
      Q Can you identify that?
      **A It looks like a term sheet.**
      Q Okay. Did you create this document?
      **A I believe I did.**
      Q Okay. For what purpose?
      **A To identify the terms of employment**
      **for John Macsherry.**
      Q Okay. Did you give this document to
      Mr. Macsherry?
      **A I believe I did.**

Schoelch Tr. 46 – 47, Ex. 1.

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **3** of **11**

Exhibit 10[2]

Q (BY MR. O'CONNELL) I'm showing you
what's been marked as Deposition Exhibit No. 10.
Can you identify that for the record, sir?
**A This looks like a red lined term**
**sheet.**
Q When you say "red lined," what do you
mean?
**A Shows changes that were made on the**
**document.**
Q Okay. Was it your practice to red
line revise documents during your tenure at CDC?
**A To red line what kind of documents?**
Q To red line revise? When you --
**A Oh, revise.**
Q Yep. Did you -- you know how to do
it, you've done --
**A Yes. That's correct.**
Q All right. And on the right-hand
side of the page there appears to be some revision
notes. Do you see those?
**A I do.**
Q And that's -- those have your name on
it; is that correct?
**A That's correct.**
Q Okay. Did you make those revisions?
**A Yes.**

**…**

 Okay. Did you make these revisions
pursuant to your negotiation with John Macsherry
for his employment?
MR. GAYFIELD: Objection, form. You
may answer.
**A I don't recall if they were made for**
**John or because of changes [Defendant] Mike [Roberts] may have suggested.**
Q (BY MR. O'CONNELL) Okay. Did you
provide a copy of this document to Mike Roberts?

---

[2] It is noteworthy that CDC's and SPLLC's Chief Operating Officer and Head of Human Resources, Rebeca Lydon, was questioned regarding the terms of Plaintiff's employment. Excepting the commission that is the subject of this case and a minor term regarding a $2,000 yearly expense reimbursement to which she claimed no knowledge, Ms. Lydon confirmed all of the terms set forth in Exhibit 10 were Plaintiff's pervious terms of employment, evidencing that the document reflects, in fact, the agreement struck by the parties. (ECF 64-6, pp. 94–97)

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **4** of **11**

> **A I don't recall.**
> Q Did you provide a copy of this
> document to John Macsherry?
> **A I believe so.**
> Q Okay. When did you provide it to
> John Macsherry?
> **A I don't recall.**
> Q Why did you provide it to John
> Macsherry?
> **A I believe because we were negotiating
> the term sheet.**
> Q For his employment?
> **A Yes.**

Schoelch Tr. 46 – 47, Ex. 1.

> Exhibit 30

> Q Okay. This document, which is marked
> as Deposition Exhibit No. 30, reflects part of the
> negotiation for John Macsherry's employment; is
> that correct?
> MR. GAYFIELD: Object to the
> characterization. You may answer.
> **A This, yeah, this looks like it was
> part of the negotiation for his employment, yes.**

Schoelch Tr. 159, Ex. 1.

Both Schoelch and Macsherry testified that negotiations over the terms of Macsherry employment included telephone calls that were following up by an email. Schoelch Tr. 63, Ex. 1. Macsherry Tr. 75 – 82, Ex. 2. Defendants argue that because the emails to which the Terms sheets were attached cannot be found, Exhibits 10, 22 and 30 are "incomplete," running afoul of Fed.R.Evid. 106. Defendants misread Fed.R.Evid. 106.

Fed.R.Evid. 106 provides, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." Fed.R.Evid. 106. The rule does not preclude the admission of evidence, which is how the Defendants wish the Court to apply it. It merely allows for the admission of additional evidence under certain circumstances. "*Rule 106 does not prohibit admission of an incomplete document*. Instead, it allows the party against whom the document is introduced to place the remainder in evidence without additional evidentiary foundation." (Emphasis added) *United States v. Phillips*, 543 F.3d 1197, 1203 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 946, 173 L. Ed. 2d 144 (2009) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171 (1988)); *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 936 (N.D. Cal. 2017). In short, Defendants' reliance on Fed.R.Evid.

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **5** of **11**

106 to preclude admission of the Term Sheets is misplaced.  Moreover, Defendants offer no case law applying Fed.R.Evid. 106 as they wish this Court to apply it.

When making their Rule of Completeness argument, Defendants misstate the record, which Plaintiff must address before moving on to their other arguments.  First, Defendants imply that the Terms Sheets were never sent to Macsherry by Schoelch. See ECF 115, pp. 1 -2. Schoelch's testimony above confirms that he gave the Terms Sheets to Macsherry during their negotiations for the job.  Second, Defendants contend that Macsherry has admitted to possessing the emails that the Terms Sheets were attached to when he responded to SPLLC's Requests for Admission.  See ECF 115 n. 2. Defendants, apparently, misunderstand Macsherry's response.

Defendants requested that Macsherry either admit or deny the following: "You do not possess any correspondence from Defendants to you enclosing or attaching any employment agreement with you."  Macsherry responded with a denial. Gayfield Ltr., Ex. 1 p. 2. Macsherry's response refers to the Terms Sheets themselves as "any correspondence" from the Defendants. Macsherry does not possess the emails from Schoelch that had the Term Sheets attached to them. Apparently, neither do the Defendants as they were not produced by them either.

Referring to the best evidence rule, Fed.R.Evid. 1002, Defendants next contend that Macsherry cannot testify as to the *contents* of the emails that the Term Sheets were attached to in order to "satisfy Rule 106 and other evidentiary objections." Gayfield Ltr., p. 2. Defendants' Fed.R.Evid. 106 argument fails for the reasons stated above. Further, Defendants do not identify the "other evidentiary objections" Plaintiff needs to satisfy by testifying as to the contents of the emails, which is fatal to their argument.

Assuming Plaintiff offers testimony concerning the content of the emails, Defendants' best evidence argument fails because it doesn't apply.  In short, Plaintiffs is not seeking to prove the content of the emails. Alternately, in the event the Court finds that the best evidence rule does apply to the emails that the Term Sheets were attached to, Plaintiff may testify as to their contents under Fed.R.Evid. 1004 (a) and/or (c) because the emails are "lost or destroyed" and have not been located by any party – including the defendants – who had control of the original and notice, by pleading or otherwise, that the originals would be a subject of proof at trial.[3]

Finally, Defendants argue that the best evidence rule precludes Macsherry from testifying that he signed an unredlined, "clean" version of the Exhibit 10 when he traveled to St. Louis to meet with Defendant Roberts and other officers of CDC and SPLLC after he accepted the terms of the position he negotiated with Schoelch. Defendants contend that Plaintiff cannot "take refuge in FRE 1004" because Plaintiff has somehow exhibited an "utter lack of diligence and failure to use all tools available at his disposal to locate the various allegedly missing documents." Gayfield Ltr., p. 3. The letter is not clear as to what document(s) it is referring to, however. In the event the "documents" Defendants refer to are the emails that the Term Sheets were attached to, Defendants

---

[3] In light of the representations made by Defendants in the Gayfield Ltr. concerning Macsherry's efforts (or *alleged* lack thereof) to locate the emails that the Terms Sheets were attached to, Mr. Macsherry proffers that he looked through his paper records and examined, both manually and using a search function to assist him, the computer he used during the relevant period as well as his email account for the subject emails.  The emails were not found.

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **6** of **11**

argument fails for the reasons stated above. In the event Defendants are referring to the unredlined, "clean" version of the Exhibit 10 that he signed in St. Louis, Defendants argument, including all of the case law cited by them conceding diligence in searching for it, does not apply.  Plaintiff requested this document during discovery pursuant to Fed.R.Civ.P. 34, inquired about it pursuant to Fed.R.Civ.P. 33 and examined Defendants' officers during their depositions about the existence of the document. Defendants did not produce it.

The Terms Sheets are not precluded from evidence under Fed.R.Evid. 802.  Defendants offer little argument that the Terms Sheets are objected to on the grounds that they are hearsay. Their objection fails for the reasons stated above and because Plaintiff contends they form the basis of the contract that is at issue in this case.  "[C]ommunications between the parties to a contract that define the terms of a contract, or prove its content, are not hearsay, as they are verbal acts or legally operative facts." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 566 (D. Md. 2007).

Additionally, Schoelch testified unequivocally that he created and edited the documents pursuant to his negotiations with Macsherry concerning the terms of Macsherry's employment agreement. Defendants' argument that because Schoelch testified that he could not remember if the edits appearing in Exhibit 10 were made pursuant to a request by Defendant Roberts or Macsherry is a red herring.  Schoelch, with Defendant Roberts' express authority, negotiated the terms of Macsherry's employment. Mike Roberts testified as follows:

> Q.    Did you ever personally negotiate the terms of Mr. Macsherry's employment?
> A.    No.
> Q.    That was done through Mr. Schoelch?
> A.    Yes.
> Q.    He communicated the terms of Mr. Macsherry's employment on your behalf?
> A.    He discussed what they discussed, yes.

Roberts Tr. 104–05, Ex. 3. Whether Macsherry may have requested a change to the terms appearing in Exhibit 10, or whether Roberts did, Schoelch was the one negotiating with Macsherry on behalf of the Defendants, and he made the changes pursuant thereto before sending it to Macsherry.  His statements (the Term Sheets) are the statements of a party opponent and, therefore, are not hearsay.   Alternatively, they are business records and admissible pursuant to Fed.R.Evid.803(6).

### Exhibits 15, 16, 29, 44 and 45 (Emails Having A Term Sheet Attached) Are Admissible

The sole reason Defendants object to Exhibits 15, 16, 29, 44 and 45 is that they are emails sent by Plaintiff to Schoelch and/or Lydon during his employment (and in the case of Exhibit 45, Defendant Roberts sending Exhibit 44 to his brother, who is President of CDC and a 50% owner), that include one of the Term Sheets as an attachment.  Because Defendants objections to the Terms Sheets are meritless for the reasons stated above, they cannot support Defendants' objections to Exhibits 15, 16, 29, 44 and 45.

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **7** of **11**

### Exhibits 11, 38, 39, 40, 64 and 65 Are Admissible[4]

Defendants misrepresent to this Court, "[a]s discussed in the Pretrial Conference, Plaintiff intends to submit these Exhibits to prove that Plaintiff was in fact employed by CDC." Gayfield Ltr. p. 4. Defendants mislead the Court. At no time during pretrial or at any other stage of this litigation has Plaintiff represented that Exhibits 11, 38, 39, 40, 64 or 65 were being offered into evidence at trial to prove that Plaintiff was employed by CDC or the truth of any other matter asserted in the exhibits.

The purpose for offering all these exhibits into evidence it to prove that Plaintiff performed his job duties under the terms of his employment agreement that is the subject of this case.

Judge Grimm summarized the issue as follows:

> Thus, even if the evidence is an assertion, made by a declarant, it still is not hearsay unless offered to prove the truth of what is asserted. The advisory committee's note to Rule 801(c) underscores this: "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." Fed.R.Evid. 801(c) advisory committee's note (citation omitted).

*Lorraine*, 241 F.R.D. at 565 (D. Md. 2007)

Plaintiff's job "duties" included the following:

> the marketing and brokerage efforts for the property; work directly with listing broker and general counsel to negotiate lease and sale contracts. Work with community organizations to increase the awareness of the property; be point person to identify international customers and port related users for the site.

> Be responsible for identifying appropriate local and state economic development packages/incentives; understanding the appropriate brown field entitlements and subsidies; work with Site Manager to address master plan issues including utility services, rail issues, zoning/subdivision issues, RET appeals, etc.

Exhibit 1 of Plaintiff's Amended Complaint (ECF 26-2), which is Exhibit 10 identified above.

---

[4] Copies of the Exhibits attached to the Gayfield Ltr. include highlighted sections. Copies of Plaintiff's exhibits he intends to use at trial were previously provided to Defendants and do not contain highlights.

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **8** of **11**

Exhibit 11, 38 and 39 are documents evidencing Macsherry was performing "marketing and brokerage efforts for the property …" which was his job. Exhibits 38 and 39 are emails between Macsherry and Lisa Harlow of Clapp Communications, a Baltimore based public relations firm, that include proposed press releases concerning Sparrows Point for Macsherry's review. Both press releases tout the release of "Sparrows Point Partnership's First Year Report," as well as the "abundance of amenities of this unique site and the impact of the site on the community, the county and the state[]" (Exhibit 38, p. 2 and Exhibit 39 p. 1).

In her email, Ms. Harlow advises Macsherry that, "[t]his statement was sent to the 4 TV stations, Baltimore Sun, Baltimore Business Journal, the Daily Record, Baltimore Brew ..., Dundalk Eagle, Dundalk Patch and East County Times." (Exhibit 39, p. 1). Plaintiff is offering these exhibits not to prove the truth of any matter stated in the exhibits but, instead, to prove that he was performing under his contract (marketing the property), making them non hearsay.

Likewise, Exhibit 11 is an email from Lydon to Schoelch that includes a news article featured on the website Baltimore.citybizlist.com, identifying John Macsherry as being responsible for leasing and development efforts for Sparrows Point, touting the property's "over 3,100 acres and [being] one of the largest available contiguous commercial sites on the eastern seaboard of the United States."  Macsherry provided his professional and educational background included in the news article in order to market the property to the public, which was one of his enumerated job responsibilities.  The article goes on to quote Defendant Roberts, touting Sparrows Point's redevelopment as an "economic center and job creator," further evidencing the article's intended positive affect on the local community and market. Exhibit 11, p. 2.  Regarding the engagement of local media outlets after buying a property like Sparrows Point, Defendant Roberts testified as follows:

> Was this CDC's practice, to provide
> press releases from time to time during its
> business, to local news outlets?
> **A Yes.**
> **Q** In the event there is a acquisition
> of a brownfield site or a commercial site,
> Commercial Development Company would want to ***engage***
> ***in positive media relations in that market***;
> correct?
> **A Yes.**

(Emphasis added) Roberts Tr. 104–05, Ex. 3. Exhibit 11 is not offered to prove the truth of any matter included in the article. Instead, it is offered to prove Macsherry performed his enumerated job duty to market Sparrows Point, and Defendants had actual notice of that fact. See *Lorraine*, 241 F.R.D. at 565 (Citing Weinstein at § 801.11[1] (" 'If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted.' Thus, if a declarant's statement is not offered for its truth, the declarant's credibility is not material, and the statement is not hearsay." (citation omitted)).

Exhibit 11, 38 and 39 are documents evidencing Macsherry was performing "marketing and brokerage efforts for the property …" which was one of his job duties enumerated in the

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **9** of **11**

contract that is the subject of this case. They are not offered to prove the truth any matter stated in the exhibits, making them non-hearsay under Fed.R.Evid. 801(c)(2). They are offered merely to prove that he was performing under his contract.

Defendants' hearsay objection to Plaintiff's Exhibits 40, 64 and 65 fail for the same reason. Plaintiff offers these exhibits to prove that he performed the duties enumerated in his contract, not to prove the truth of any matter asserted in these documents.

Exhibit 40 is an email from Schoelch attaching a letter of intent ("LOI") from Matthew Rayan of Ryan Commercial Real Estate Services to the Plaintiff regarding the purchase of 375 acres of Sparrows Point property, including proposed terms and conditions of the sale. The LOI evidences Macsherry's *performance* of the following enumerated job duty: "work directly with listing broker and general counsel to *negotiate lease and sale contracts*." (Emphasis added) Exhibit 1 of Plaintiff's Amended Complaint (ECF 26-2), which is Exhibit 10 identified above.  It is not offered to prove the truth of any matter asserted in the document, making it not hearsay.[5] *Lorraine*, 241 F.R.D. at 565

Defendants correctly Exhibits 64 and 65 as letters from officials from the Maryland State Highway Administration ("SHA") concerning the ownership of certain bridges located on the Sparrows Point Property, the bridges' structural condition and the SHA's rehabilitation project for Bridge No. 1.[6] Exhibits 64 and 65 evidence Macsherry's performance of the following enumerated job duties:

> Be responsible for identifying appropriate local and state economic development packages/incentives; understanding the appropriate brown field entitlements and subsidies; work with Site Manager to address master plan issues including utility services, rail issues, zoning/subdivision issues, RET appeals, etc.

Exhibits 64 and 65 are not offered to prove the truth of any matter asserted in the document. They are offered to prove that Macsherry performed his "boots on the ground" job responsibilities, making them not hearsay. *Lorraine*, 241 F.R.D. at 565.

Alternatively, in the event the Court finds that Exhibits 11, 38, 39, 40, 64 and 65 fall within the definition of hearsay, they are, nonetheless, admissible under the business records exception to the rule.  Fed.R.Evid. 803 (6).

Finally, Defendants contend that despite CDC and SPLLC admitting that dozens of Exhibits identified by Plaintiff are genuine, including 10 and 22, they can now – two years later - object to the authenticity of those exhibits.  CDC's and SPLLC's objections regarding the authenticity of these documents are without merit.

---

[5] As Plaintiff was recipient of the letter from Matthew Ryan, he can testify as to its authenticity. Contrary to Defendants' assertion, Mr. Ryan's presence at trial is not necessary for its admission into evidence.

[6] Sparrows Point is bisected by portions of the Interstate 695, which included access ramps, a feature heavily marketed by the Defendants to potential buyers of the industrial site.

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **10** of **11**

      Fed.R.Civ.P. 36 provides, in pertinent part,

> (1) Scope. A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> **…**
>
> (B) the genuineness of any described documents.

Fed.R.Civ.P. 36(a)(1)(B).  The purpose of the rule is "to avoid the need to have a record custodian appear and testify as to the document's authenticity."  Steven Baicker–Mckee Et Al., *Federal Civil Rules Handbook* 896 (2018)).

      Following the close of discovery in this case, pursuant to Fed.R.Civ.P. 36, Plaintiff served 55 identical Requests for Admission on Defendants Roberts, CDC and SPLLC concerning Plaintiff's trial exhibits.  The requests were identical to all three Defendants:

> "Admit that [Exhibit 1 – 55[7]] attached hereto is a true, accurate and complete duplicate copy of Your business record."

Defendants CDC and SPLLC responded as follows concerning most of the exhibits identified.

> "Admitted that the described document is genuine, otherwise denied."

Defendant Roberts, however, elected to deny all of Plaintiffs requests for admission that the identified documents were "a true, accurate and complete duplicate copy of [His] business record." See Gayfield Ltr., Exhibits 3, 4 and 5.  Defendants CDC and SPLLC now contend that they were merely admitting that the exhibits were "true copies of documents emailed by Plaintiff to Defendants[]" and not to their respective authenticity. See Gayfield Ltr., n. 4. Defendants' argument does not hold water.

      Preliminarily, the Court should consider Defendants' dubious explanation concerning what they admitted to in light of the entirety of all three Defendants' responses.  Doing so reveals that Defendants CDC, SPLLC and, in particular, Roberts understood the nature of Plaintiff's requests (they elected to use the exact terminology used in Rule 36 *i.e.* that the documents were "genuine") and, importantly, took differing positions on the authenticity of certain documents, meaning their admissions derived from their respective defenses in this case and not from a single proposition that the exhibits were merely "true copies of documents emailed by Plaintiff to Defendants." See Gayfield Ltr., n. 4.

---

[7] The Exhibit numbers used in the requests for admission correspond to those identified by Plaintiff for trial.

The Honorable Frederick P. Stamp, Jr.
Senior U.S. District Judge
April 25, 2018
Page **11** of **11**

Defendants CDC and SPLLC "admitted" that certain documents were "genuine" in accordance with Rule 36.  "Admissions under Rule 36 are binding and cannot be controverted at trial." Steven Baicker–Mckee Et Al., *Federal Civil Rules Handbook* 896 (2018)).

To be sure, however, Defendants have only admitted to the authenticity of certain exhibits. At no time has Plaintiff taken the position they the admissions amounted to a waiver to other objections unrelated to authenticity Defendants may have regarding these documents.

Finally, Defendants request leave to amend their answers. The request comes *two years* after Defendants responded to the requests and *over two months* after the first pretrial conference on February 23 before Judge Hollander when this issue first arose.  Allowing Defendants CDC and SPLLC to change their answers at this late stage – after the Plaintiff has submitted his Pretrial Order and so close to trial – would prejudice the Plaintiff's case.

Respectfully submitted,

/s/

Andrew K. O'Connell

cc:     All counsel *via* ECF